# UNITED STATES DISTRICT COURT

## DISTRICT OF MINNESOTA

Eric M. Sorenson,

                Plaintiff,

vs.

State of Minnesota, et al.

                Defendants.

Case No. 21-cv-00671-NEB-LIB

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

## INTRODUCTION

Plaintiff Eric Sorenson, a civilly committed sex offender, alleges that Defendants improperly denied his request for permission to use the restroom during assigned programming activities. As a result, Mr. Sorenson alleges that Defendants violated the Americans with Disabilities Act and the Rehabilitation Act; his rights to equal protection and substantive due process under the Fourteenth Amendment; and state law. Mr. Sorenson's allegations are speculative and fail to plausibly support any claim. In addition, Defendants are entitled to qualified immunity. The Court should therefore dismiss Mr. Sorenson's Complaint under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) for lack of subject-matter jurisdiction and failure to state a claim upon which relief can be granted.

# STATEMENT OF FACTS[1]

Plaintiff Eric M. Sorenson is a sex offender civilly committed to the Minnesota Sex Offender Program (MSOP). (Compl. ¶ 5.) MSOP is operated by the Minnesota Department of Human Services and provides treatment and supervision to civilly committed sex offenders. Minn. Stat. §§ 246B.02; 253D.02, subds. 13–16. Mr. Sorenson has named the State of Minnesota as Defendant without any explanation (Compl. ¶ 13), has named DHS because it the "administrative agency in charge of overseeing and operating the MSOP" and has "implemented policies, practices, etc. which have had a direct and proximate negative acts and omissions on the Plaintiff (*id.*, ¶ 14)." Against Defendant MSOP, he alleges that MSOP "has and continues to deny the Plaintiff a reasonable accommodation for his disability discussed herein and thereby discriminating against the Plaintiff on the basis of that disability." (Id., ¶ 15.)

## I.    MR. SORENSON'S BATHROOM GRIEVANCE

Mr. Sorenson alleges that on September 6, 2020, he submitted a Client Request for Reasonable Modification form[2] to MSOP requesting an accommodation "to be able to use the restroom during assigned programming." (Compl. ¶ 34; Decl. Gilphin Ex. 1, at p. 2 of 25.)[3] He stated that he wanted to use "the restroom during assigned programming

---

[1] Defendants do not admit the facts alleged in Mr. Sorenson's complaint but acknowledge that the allegations are taken as true in a motion to dismiss. *See Levy v. Ohl*, 477 F.3d 988, 991 (8th Cir. 2007).

[2] Defendants are using the descriptions of these documents provided in Mr. Sorenson's complaint.

[3] Defendants provide Mr. Sorenson's RM Request, and Defendants and Mr. Sorenson's responses that followed in Exhibit 1 to the declaration of Krista Gilpin. *See Wickner v. McComb*, 2010 WL 610913, at *3 (D. Minn. 2010) (citing *Porous Media Corp. v. Pall*

without being asked to leave the programming event in situations where [he] feel[s] the urge to use the bathroom badly which could not have been planned for prior to the programming event." (Compl. ¶ 38 [brackets in original]; Decl. Gilpin Ex. 1 at p. 8 of 25.]) He also stated: "A lot of the programming that I attend have [*sic*] a rule that I cannot leave to use the restroom during the course of that programming event. If I do leave then I will [not be] able to return to the event until the next time." (Compl. ¶ 40; Decl. Gilpin at p. 25 of 25.)

The RM Request was forwarded to Defendant Krista Gilpin. (Decl. Gilpin Ex. 1 at p. 2 of 25.) Mr. Sorenson alleges that Defendant Gilpin works as an RN Supervisor at MSOP, and she is "in charge of initially making a determination on a reasonable accommodation request…" (Compl. ¶16.)

On September 18, 2020, Defendant Gilpin denied the RM Request on a Determination of Client Request and Reasonable Modification Plan ("RM Determination"). (*Id.*, ¶ 42; Decl. Gilpin Ex. 1 at p. 7 of 25.) She confirmed that Mr. Sorenson had never made an accommodation request on this issue. (*Id.*) In support of her decision, she confirmed the following: (1) health services has "no documented physical impairment for Mr. Sorenson; (1) Mr. Sorenson had his gallbladder removed in 2001 "without any complications;" (2) Mr. Sorenson's medical staff had no documentation of incontinence; (3) Mr. Sorenson had not brought the bathroom issue to medical staff's

---

*Corp.,* 186 F.3d 1077, 1079 (8th Cir. 1999)) ("A court may consider the complaint, matters of public record, orders, materials embraced by the complaint, and exhibits attached to the complaint in deciding a motion to dismiss under Rule 12(b)(6).").

attention over the past year and a half; (4) Mr. Sorenson skipped his July 2020 annual and physical exam; and (5) Mr. Sorenson never mentioned the issue at a 2019 dietitian appointment. (Compl. ¶ 46; Decl. Gilpin Ex. 1, at p. 6 of 25.)

Then the RM Determination was sent to Defendant Nicole Boder. According to Mr. Sorenson, she works as the Administrative RN Supervisor and ADA Coordinator at MSOP's Moose Lake facility, and that she is "in charge of the review of the decision to accept or deny a reasonable accommodation to the Plaintiff." (Compl. ¶ 17.)

On September 18, 2020, Ms. Boder denied the RM Determination because Mr. Sorenson's request did "not meet the definition of a disability."[4] (*Id.*, ¶ 49; Decl. Gilpin Ex. at p. 7 of 25.) She encouraged Mr. Sorenson to "work with his primary nursing team on this issue as there is no current documentation of this being a concern for him," and to attend his next annual exam appointment." (*Id..*)

On September 22, 2020, Mr. Sorenson appealed the RM Determination denial in an ADA Modifications Appeal Request ("ADA Appeal") and submitted an additional document and included the RM Request Determination and the RM Request (collectively, the "ADA Appeal Packet"). (Compl. ¶ 51; Decl. Gilpin Ex. 1 at p. 1 of 25.) In the additional document, he acknowledged that he had never brought up incontinence with medical staff but argued that this issue qualified as a disability under the ADA because he had "problems with [his] bladder and bowels." (*Id.*, ¶ 52; id., pp. 13–14 of 25.)

---

[4] It is not clear from Exhibit 1 whether Defendant Boder simply approved Defendant Gilpin's determination, or whether the additional statements above her signature in support of the denial were written by Defendant Gilpin. *See Levy*, 477 F.3d at 991("allegations are taken as true in a motion to dismiss.")

Defendant Eric Skon then received Mr. Sorenson's ADA Appeal Packet. According to Mr. Sorenson, Mr. Skon is the "ADA Coordinator for DHS," and is "in charge of receiving, reviewing and deciding on denials of ADA requests for reasonable accommodations…" (*Id.*, ¶ 18.) In a letter dated October 22, 2020, Defendant Eric Skon informed Mr. Sorenson that "your appeal is denied" because Mr. Sorenson's medical records contained no reference to incontinence and because the issue does not qualify as a disability, as someone "who cannot sit through an entire meeting" is not "substantially limited in bowel and bladder functions." (*Id.*, ¶ 56; Decl. Gilpin at p. 5 of 25.)

At no point in the RM Request appeal process did Mr. Sorenson allege that incontinence caused him any pain or discomfort. (*See id.*, ¶¶ 34–56; see Decl. Gilpin Ex. 1.)

## II.  MR. SORENSON'S COMPLAINT

Mr. Sorenson alleges that because his gallbladder was removed in 2001, he has "to use the restroom to vacate his bowels on a much more frequent and unscheduled basis" than a "person in general society" or a "person with IBS." (Compl. ¶¶ 26–31.)

The basis of Mr. Sorenson's complaint is that he is not allowed to "use the bathroom during programming hours while attending assigned programming" and then return "during the course of that programming event." (*Id.*, ¶¶ 3, 40.)

Mr. Sorenson mentions for the first time in his complaint a "serious injury to his person" in the form of "extreme prolonged and unnecessary pain" when he is "unable to use the restroom to evacuate his bowels." (Compl. ¶ 65.) He alleges that this pain is "extreme and prolonged" and, on a scale of 1 to 10, "about a 10 and at times a 10+." (*Id.*,

¶ 62.) Nevertheless, the only activity that Mr. Sorenson alleges is affected by his incontinence is MSOP "assigned programming." (*Id.*, ¶ 3.)

Mr. Sorenson also alleges that "Defendants have pegged the Plaintiff as a person whom [*sic*] files and knows how to file lawsuits and grievances against the Defendants and that files a lot of them." (*Id.*, ¶ 59.) Mr. Sorenson alleges no specific facts in support of this allegation.

## III. RELIEF SOUGHT

Mr. Sorenson filed suit alleging violations of the ADA, the RA, the First Amendment, the Due Process and Equal Protection Clauses of Fourteenth Amendment, the Minnesota Constitution, and the Minnesota Human Rights Act, and arguably other state-law claims. Mr. Sorenson sued all Defendants (other than the State of Minnesota, the Minnesota Department of Human Services, and MSOP) in their individual and official capacities. (Compl. ¶ 5.) Mr. Sorenson seeks declaratory and injunctive relief and compensatory and punitive damages.

## STANDARD OF REVIEW

To survive a motion to dismiss under Rule 12(b)(6) motion, a "complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009) (internal quotation marks and citations omitted). Claims have "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (citation omitted). Courts must undertake the "context-specific task" of determining

whether the plaintiff's allegations "nudge[]" his claims against each defendant "across the line from conceivable to plausible." *Id.* at 679–80 (citations and internal quotation marks omitted). The plausibility standard is not akin to a "probability requirement," but it "requires a plaintiff to show . . . that success on the merits is more than a 'sheer possibility.'" *Braden*, 588 F.3d at 594 (quoting *Iqbal*, 556 U.S. at 678). Legal conclusions and "formulaic recitation of the elements of a cause of action" fail to state a claim. *Id.* (citing *Iqbal*, 556 U.S. at 678). "A court may consider the complaint, matters of public record, orders, materials embraced by the complaint, and exhibits attached to the complaint in deciding a motion to dismiss under Rule 12(b)(6)." *Wickner v. McComb*, 2010 WL 610913, at *3 (D. Minn. 2010) (citing *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999)).

The Court may dismiss a complaint for lack of subject-matter jurisdiction under Rule 12(b)(1). *Osborn v. United States*, 918 F.2d 724, 729 (8th Cir. 1990).

## ARGUMENT

The Court lacks jurisdiction over any damages claims against Defendants in their official capacities and over any state-law claims against Defendants in their official capacities. Even if the Court exercises supplemental jurisdiction over any state law claim, Mr. Sorenson fails to state any such claim. In addition, Mr. Sorenson fails to state a claim for a violation of the ADA or RA, for violation of his constitutional rights under various theories, or for punitive damages. Finally, Defendants are entitled to qualified immunity.

# I.  MSOP IS NOT A COGNIZABLE LEGAL ENTITY.

All claims against MSOP should be dismissed because MSOP is not a cognizable legal entity subject to suit.  *See Johnson v. Minn. Sex Offender Program, (MSOP), Treatment Facility*, No. CIV. 12-1875 DSD/LIB, 2012 WL 3848571, at *2 (D. Minn. Aug. 15, 2012) ("MSOP[] does not appear to be a cognizable legal entity that has the capacity to be sued."), *report and recommendation adopted by* 2012 WL 3854977 (D. Minn. Sept. 5, 2012).  MSOP is a program established and maintained by DHS.  Minn. Stat. § 246B.02.  Plaintiff alleges no facts suggesting that MSOP is an independent legal entity apart from DHS.  Absent such allegations, Plaintiff's claims against MSOP must be dismissed.  *See Brown v. Fifth Judicial Dist. Drug Task Force*, 255 F.3d 475 (8th Cir. 2001) (recognizing that a complaint fails to state a claim if the defendant is not a legal entity capable of being sued); *see also, e.g.*, *Traylor v. Hennepin Cty. Adult Det. Ctr.*, No. 15-CV-2816 (JNE/TNL), 2016 WL 3647779, at *4 (D. Minn. May 27, 2016) (dismissing claim against Hennepin County Adult Detention Center on the ground that it "is an operational department of Hennepin County, not a separate legal entity"), *report and recommendation adopted by* 2016 WL 3647849 (D. Minn. July 1, 2016).[5]

---

[5] Even if MSOP were an entity subject to suit, its dismissal would still be necessary for the same reasons DHS's dismissal is necessary.  *See Glick v. Henderson*, 855 F.2d 536, 540 (8th Cir. 1998); *Johnson v. MSOP*, 12-1875 (DSD/LIB), 2012 WL 3848571, at *2 (D. Minn. Aug. 15, 2012).

## II. THE COURT LACKS JURISDICTION OVER ANY DAMAGES CLAIMS AGAINST DEFENDANTS IN THEIR OFFICIAL CAPACITIES.

The Supreme Court "long ago held that the [Eleventh] Amendment bars suits against a State by citizens of that same State." *Papasan v. Allain*, 478 U.S. 265, 276 (1986) (citing *Hans v. Louisiana*, 134 U.S. 1, 10 (1890)); *Welch v. Tex. Dep't of Highways and Pub. Transp.*, 483 U.S. 468, 472 (1987). The Eleventh Amendment prohibits claims in federal court for monetary damages against state-employee defendants in their official capacities. *Treleven v. Univ. of Minnesota*, 73 F.3d 816, 818 (8th Cir. 1996) (citation omitted). Although a state may waive its Eleventh Amendment immunity,[6] Congress did not abrogate, and the Minnesota Legislature did not waive, Minnesota's Eleventh Amendment immunity concerning the section 1983 claims raised by Mr. Sorenson against Minnesota, DHS, MSOP, and the individual Defendants. *See DeGidio v. Perpich,* 612 F. Supp. 1383, 1389 (D. Minn. 1985). The Court should therefore dismiss with prejudice for lack of subject-matter jurisdiction any section 1983 claims for damages against Defendants in their official capacities.

## III. THE COURT LACKS JURISDICTION OVER MR. SORENSON'S STATE-LAW CLAIMS AGAINST DEFENDANTS IN THEIR OFFICIAL CAPACITIES.

The Eleventh Amendment also bars federal court jurisdiction over state-law claims that a state has not consented to regardless of the remedy sought. *Cooper v. St. Cloud State Univ.,* 226 F.3d 964, 968 (8th Cir. 2000) (citation omitted). Minnesota did not waive its Eleventh Amendment immunity in relation to Mr. Sorenson's state-law tort claims being

---

[6] *Gunter v. Atlantic Coast Line R.R. Co.*, 200 U.S. 273, 284 (1906).

heard in federal court.  *See Hoeffner v. Univ. of Minnesota*, 948 F. Supp. 1380, 1392 (D. Minn. 1996).  Mr. Sorenson's state-law claims against Defendants in their official capacities should be dismissed for lack of jurisdiction.

## IV.  THE COURT SHOULD DECLINE TO EXERCISE SUPPLEMENTAL JURISDICTION OVER ANY STATE-LAW CLAIMS AGAINST DEFENDANTS IN THEIR INDIVIDUAL CAPACITIES.

Although the Court has discretion to exercise supplemental jurisdiction over individual-capacity claims for alleged violations of state law, the Eighth Circuit has "stress[ed] the need to exercise judicial restraint and avoid state law issues wherever possible."  *Gregoire v. Class*, 236 F.3d 413, 419–20 (8th Cir. 2000).  The Court should decline to exercise supplemental jurisdiction over Plaintiff's state-law claims against Defendants in their individual capacities, because all of the federal claims against them should be dismissed, as established in this motion.

## V.  EVEN IF THE COURT EXERCISES SUPPLEMENTAL JURISDICTION OVER THE STATE-LAW TORT CLAIMS AGAINST DEFENDANTS IN THEIR INDIVIDUAL CAPACITIES, THESE CLAIMS MUST BE DISMISSED.

Mr. Sorenson alleges that Defendants' actions constitute negligence, and negligent and intentional infliction of emotional distress.  These state-law tort claims must be dismissed.

Official immunity requires that a plaintiff seeking monetary damages against state officials for state-law torts establish that each defendant committed a "willful or malicious wrong".  *Hassuneh v. City of Minneapolis*, 560 F.Supp.2d 764, 771 (D. Minn. 2008) (negligence claim against defendant police officers fails unless officers acted willfully or maliciously); *see B.J.R ex rel. Garcia v. Golgart*, No. 11-1105 (JRT/SER), 2013

WL 3455598, at *1 (D. Minn. Jul. 9, 2013) (intentional and negligent infliction of emotional distress are Minnesota state-law tort claims). The plaintiff also must establish that the wrong was a result of a ministerial act, rather than an exercise of discretion. Hassuneh, 560F.Supp.2d at 771.

A willful or malicious wrong is "the intentional doing of a wrongful act without legal justification or excuse, or, otherwise stated, the willful violation of a known right." *Rico v. State*, 472 N.W.2d 100, 107 (Minn. 1991) (citation omitted) (internal quotation marks omitted). "An official's duty is ministerial when it is absolute, certain and imperative, involving merely execution of a specific duty arising from fixed and designated facts." *Davis v. Hennepin Cty.*, 559 N.W.2d 117, 112 (Minn. Ct. Appeals 1997) (internal quotations and citations omitted).

Here, Defendants compared the RM Request he submitted to his medical records and determined that his bathroom request lacked any support in his medical record. Even if Defendants' determination were incorrect, there no facts alleged in the complaint that would allow a court to determine that Defendants were willful or malicious. *See Iqbal*, 556 U.S. at 678 (when ruling on motion to dismiss, courts may not accept as true "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements"). And a determination in response to a request for accommodation of an alleged disability, necessarily a case-by-case process, is discretionary act entitled to official immunity. *See* Davis, 559 N.W.2d at 123 (citation omitted) ("[t[he determination of what response is appropriate clearly involves the judgment and discretion of the official making the determination.")

# VI. MR. SORENSON'S ADA AND RA CLAIMS FAIL AS A MATTER OF LAW.

## A. Claims Under the ADA and RA Cannot Be Brought Against Defendants in Their Individual Capacities.

Mr. Sorenson sues Defendants in their individual and official capacities for alleged violations of the ADA and the RA. It is well settled, however, that claims under the ADA and RA cannot be brought against state officials in their individual capacities. *Dinkins v. Corr. Med. Servs.,* 743 F.3d 633, 634 (8th Cir. 2014) ("This court affirms the dismissal of the individual-capacity claims against [the state-officials]. They cannot be sued in their individual capacities under the ADA or the RA."); *Garcia v. S.U.N.Y. Health Scis. Ctr. Of Brooklyn,* 280 F.3d 98, 107 (2d Cir. 2001) ("Insofar as [plaintiff] is suing the individual defendants in their individual capacities, neither Title II of the ADA nor § 504 of the RA provides for individual capacity suits against state officials."); *Richards v. Ritchie*, No. CIV. 13-3029 JRT/JSM, 2015 WL 1522237, at *5 (D. Minn. Mar. 30, 2015) ("A plaintiff cannot assert ADA and RA claims against state officials in their individual capacities."). For this reason, Mr. Sorenson's individual-capacity ADA and RA claims should be dismissed.[7]

---

[7] Additionally, Mr. Sorenson purports to bring his ADA and RA claims pursuant to section 1983, but these claims are not cognizable under section 1983. *See Davis v. Francis Howell Sch. Dist.,* 104 F.3d 204, 206 (8th Cir. 1997) ("[T]he comprehensive enforcement mechanisms provided under § 504 and the ADA suggest Congress did not intend violations of those statutes to be also cognizable under § 1983."); *Pona v. Cecil Whittaker's, Inc.,* 155 F.3d 1034, 1038 (8th Cir. 1998) ("ADA violation is not actionable under § 1983 in any case."); *Richards v. Dayton*, No. CIV. 13-3029 JRT/JSM, 2015 WL 1522199, at *40 (D. Minn. Jan. 30, 2015), *report and recommendation adopted sub nom. Richards v. Ritchie*, No. CIV. 13-3029 JRT/JSM, 2015 WL 1522237 (D. Minn. Mar. 30, 2015) ("Because Title II of the ADA and § 504 of the RA incorporate comprehensive remedial schemes, 'Congress did not intend violations of those statutes to be also cognizable under

## VII. MR. SORENSON ALSO FAILS TO STATE A CLAIM UNDER THE RA BECAUSE HE DOES NOT ALLEGE THAT MSOP RECEIVES FEDERAL FUNDING.

Additionally, Mr. Sorenson's official-capacity RA claim must be dismissed because Mr. Sorenson does not allege that MSOP receives federal funding. Broadly stated, to prevail under either the RA or the ADA, Mr. Sorenson must show that he is a qualified person with a disability and that he was discriminated against based on his disability. *Bahl v. Cty. Of Ramsey*, 695 F.3d 778, 783 (8th Cir. 2012). But unlike the ADA, the RA requires that Mr. Sorenson also show that he was denied "the benefits of a program or activity of a public entity receiving federal funds." *M.Y., ex rel., J.Y. v. Special Sch. Dist. No. 1*, 544 F.3d 885, 888 (8th Cir. 2008).

To state a claim under the RA, Mr. Sorenson may not merely rely on the fact that the state of Minnesota receives federal funding; rather, he must allege that the specific state program or activity he complains of receives federal funding. *See Jim C. v. U.S.*, 235 F.3d 1070, 1081 n.3 (8th Cir. 2000) ("If the entire state government were subject to Section 504 whenever any of its parts received federal funds, then subsection (b)(1)(B) would be superfluous; both the distributing and receiving state entities would be already covered under (b)(1)(A) whenever either received federal funds. Other circuits interpreting this definition of "program or activity" have come to the same conclusion.").

---

§ 1983.'"); *Battle v. Minnesota Dep't of Corr.*, 40 F. App'x 308, 309 (8th Cir.2002) ("We agree with the District Court that [plaintiff's] disability-based discrimination claims were either not cognizable under § 1983 or fail on their merits. As to his ADA and RA claims, his sole recourse was under the ADA and RA themselves …."). For this additional reason, Mr. Sorenson's official-capacity ADA and RA claims should be dismissed.

Here, Mr. Sorenson also sues Defendants in their official capacities and alleges that they are employed by MSOP and DHS. "A suit against a public employee in his or her official capacity is merely a suit against the public employer." *Johnson v. Outboard Marine Corp.*, 172 F.3d 531, 535 (8th Cir. 1999). As such, Mr. Sorenson's official-capacity RA claim is against DHS, but Mr. Sorenson does not allege that MSOP—the specific DHS program that operates the facility that houses Mr. Sorenson—receives any federal funds. Instead, he alleges that "[t]he Defendants do accept federal funding through their parent organization of Defendant DHS." (Compl., ¶ 58.) Because this is insufficient to state a claim under the RA, Mr. Sorenson's RA claim should be dismissed. *See Nahkahyen-Clearsand v. Dep't of Health & Human Servs.,* No. 8:17CV43, 2017 WL 1283494, fn. 3 (D. Neb. Apr. 5, 2017) ("Because federal funding is not alleged, Plaintiff's Complaint does not state a claim for relief under the RA."); *see also Bishop v. Jesson,* No. CV 14-1898 (ADM/SER), 2016 WL 8674584, at *18 (D. Minn. Feb. 12, 2016), *report and recommendation adopted,* No. CV 14-1898 ADM/SER, 2016 WL 906422 (D. Minn. Mar. 9, 2016) (dismissing MSOP client's claim against MSOP officials under the Religious Land Use and Institutionalized Persons Act because plaintiff failed to plead facts showing MSOP receives federal funding, which is a necessary element of this claim).

## VIII. MR. SORENSON FAILS TO STATE AN ADA CLAIM AGAINST DEFENDANTS IN THEIR OFFICIAL CAPACITIES.

Mr. Sorenson alleges that his incontinence issue qualifies as a disability under the ADA, but the factual allegations in his own complaint show that he did not bring to Defendants' attention any facts supporting his current allegation of substantial limitation

when he grieved the bathroom issue at MSOP, and his self-diagnosis of incontinence contradicts his admission that his medical records contradict his self-diagnosis.[8]

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. To make a claim under Title II of the ADA, Mr. Sorenson must show that (1) he is a person with a disability as defined by statute; (2) he is otherwise qualified for the benefit in question; and (3) he was excluded from the benefit due to discrimination based upon disability. *Randolph v. Rodgers*, 170 F.3d 850, 858 (8th Cir. 1999). Mr. Sorenson's complaint runs afoul of elements (1) and (3).

The ADA defines "disability" as either a "physical or mental impairment that substantially limits one or more major life activities of [an] individual," a record of such an impairment, or being regarded as having such an impairment. 42 U.S.C. § 12102. To establish that conditions are substantially limiting, Mr. Sorenson must demonstrate that he is "[s]ignificantly restricted as to the condition, manner or duration under which [he] can

---

[8] Mr. Sorenson alleges that Defendants' denial of his bathroom RM Request has "caused the Plaintiff to sustain serious injury to his person." (Compl., ¶ 65.) To the extent that Mr. Sorenson seeks to raise claims under the ADA or RA based on improper medical treatment, he fails to state a claim. Claims based on medical treatment decisions cannot form the basis of a claim under the RA or the ADA. *Burger v. Bloomberg*, 418 F.3d 882, 883 (8th Cir. 2005); *see, e.g., Schiavo ex rel. Schindler v. Schiavo*, 403 F.3d 1289, 1294 (11th Cir. 2005) ("The Rehabilitation Act, like the ADA, was never intended to apply to decisions involving termination of life support or medical treatment."); *Fitzgerald v. Corr. Corp. of Am.*, 403 F.3d 1134, 1144 (10th Cir. 2005) (inmate's claims under RA and ADA were properly dismissed for failure to state claim as they were based on medical treatment decisions).

perform a particular major life activity," as compared to the average person. *Kirkeberg v. Canadian Pac. Ry.*, 619 F.3d 898, 903 (8th Cir. 2010). The evidence in support of this contention must be more than generic "evidence of a medical diagnosis of an impairment." *Id.* And the impairment's impact must be "permanent and long term." *Barnes v. Nw. Iowa Health Ctr.*, 238 F. Supp. 2d 1053, 1071 (N.D. Iowa 2002).

Self-diagnosis cannot serve as the basis for an ADA claim, and a plaintiff cannot state an ADA claim based on the plaintiff's own belief, without more, when at the time the plaintiff sought reasonable accommodation no evidence—medical or otherwise—supported alleged disability. *See e.g., Ristrom v. Asbestos Workers Local 34 Joint Apprentice Comm.*, 370 F.3d 763, 772 (8th Cir. 2004) (affirming summary judgment in apprentice program when at time apprentice sought accommodation for alleged learning disability, "the most the [program] knew is that [the plaintiff] perceived himself as having a disability, but no medical provider agreed with [his] self-diagnosis.") *Crowell v. Beeler*, No. 14-CV-01724 (AWI/BAM), 2017 WL 1198579, at *7 (E.D. Cal. Mar. 31, 2017) ("Courts have recognized that attempts by a plaintiff to self-diagnose an impairment are insufficient for a claim to go forward."); *Heit v. Aerotek Inc.*, 15-1805 JCC, 2016 WL 6298771, at *3–*4 (W.D. Wash. Oct. 27, 2016) (stating that "[a] plaintiff cannot self-diagnose her own disability" and finding insufficient evidence of a disability because, "[w]ithout more, Mr. Heit's claim that he has 'shy bladder syndrome' amounts to self-diagnosis, and is insufficient as a matter of law for his claim to go forward under the ADA...."); *see also Ernst v. Wheeler Const., Inc.*, 2009 WL 1513106, *5 (D. Ariz. Mar. 17, 2009) ( "where medical evidence is actually available, this Court concludes that Plaintiff

cannot create an issue of fact by offering only his own affidavit with a self-diagnosis in contradiction of a doctor's contemporaneous diagnosis.").

Here, by Mr. Sorenson's own admission, there was no record of his alleged impairment, and he was never regarded by MSOP as having such an impairment. (*See* Compl. ¶¶ 34–56.) Because he admittedly has no medical evidence supporting his self-diagnosis, Mr. Sorenson's complaint fails to state an ADA claim upon which relief may be granted. *Ristrom*, 370 F.3d at 772 (" [the plaintiff] perceived himself as having a disability, but no medical provider agreed with [his] self-diagnosis.")

## IX. EVEN IF THE COURT EXERCISES SUPPLEMENTAL JURISDICTION OVER THE MINNESOTA HUMAN RIGHTS ACT CLAIM, IT MUST BE DISMISSED.

Mr. Sorenson's claims that Defendants' actions violated the Minnesota Human Rights Act, but the MHRA claim must be dismissed along with his ADA claim against Defendants in their official capacities.

Mr. Sorenson invokes the Minnesota Human Rights Act, but the MHRA and the ADA are "construed similarly." *Bahl v. Cty. Of Ramsey*, 695 F.3d 778, 783–84 (8th Cir. 2012) (considering the plaintiff's ADA claim for failure to reasonably accommodate against a public entity under 42 U.S.C. § 12132 together with his MHRA and RA claims); *see Hustvet v. Allina Health System*, 283 F. Supp. 3d 734, 739 n.2 (D. Minn. 2017) ("Because the standards now appear to align, and because [the plaintiff] does not make any argument that she is materially (as opposed to substantially) limited in her performance of major life activities, the Court analyzes her [MHRA] claims under the amended ADA standard.") Because Mr. Sorenson fails to state an ADA claim, he fails to state a claim

under the MHRA as well.  *See id.* (granting summary judgment in favor of defendant on ADA and MHRA claims).

## X.    MR. SORENSON FAILS TO STATE A FIRST AMENDMENT RETALIATION CLAIM.

Mr. Sorenson alleges that "Defendants have pegged the Plaintiff as a person whom [*sic*] files and knows how to file lawsuits and grievances against the Defendants and [ ] files a lot of them." (Compl., ¶ 59.)  But Mr. Sorenson provides no facts in support of this allegation or any basis for linking his lawsuits (the protected activity) to the denial of his bathroom RM Request (the allegedly adverse action).

A defendant's actions violate the First Amendment when: (1) the plaintiff engaged in a protected activity; (2) the government official took adverse action against the plaintiff that would chill a person of ordinary firmness from continuing the activity; and (3) the adverse action was motivated at least in part by the exercise of the protected activity. *Revels v. Vincenz,* 382 F.3d 870, 876 (8th Cir. 2004) (citation omitted).  "The third element requires proof of but-for causation: [t]o establish the third element of the prima facie case for retaliatory discipline . . . a[] [MSOP client] must show that but for a retaliatory motive the [MSOP] official would not have" disciplined the plaintiff.  *See Favors v. Hoover*, No. CIV. 13-428 (JRT/LIB), 2014 WL 4954687, at *12 (D. Minn. Sept. 30, 2014) (internal quotation marks and citation omitted) (brackets added)).  Retaliation need not have been the sole motive, but it must have been a "substantial factor" in the decision.  *See Wishnatsky v. Rovner*, 433 F.3d 608, 613 (8th Cir. 2006).   At the pleading stage, conclusory allegations of retaliation are insufficient; a plaintiff must make specific factual allegations tying the protected activity to the alleged retaliation.  *Cooper v. Schriro*,

189 F.3d 781, 784 (8th Cir. 1999) (broad and conclusory allegations insufficient to state retaliation claim).

The right to file a legal action is protected under the First Amendment, as is the right to use a facility's grievance procedures. *Spencer v. Jackson Cty.*, 738 F.3d 907, 911 (8th Cir. 2013) (internal quotation marks and citation omitted); *Dixon v. Brown*, 38 F.3d 379 (8th Cir. 1994).

Here, however, Mr. Sorenson fails to state a retaliation claim because he fails to plead but-for causation. As in his prior suits alleging retaliation, Mr. Sorenson "merely identifies his protected activity" of filing grievances against the defendants and "conclusorily alleges" a causal connection; such allegations are insufficient to state a claim. *See Cooper*, 189 F.3d 781 at 784 (broad and conclusory allegations insufficient to state retaliation claim); *Sorenson v. Minn. Dep't. of Human Serv.*, No. 13-2958 (ADM/LIB), 2014 WL 4185817, at *21 (D. Minn. Aug. 22, 2014), *report and recommendation adopted in part and stricken in part on other grounds,* No. 13-2958 (ADM/LIB), 2014 WL 6901804 (D. Minn. Sept. 8, 2014); *Sorenson v. Minn. Dept. of Human Serv.*, No. 14-4193 (ADM/LIB), 2015 WL 251720 at *18 (D. Minn. Jan. 20, 2015). Because Mr. Sorenson fails to allege facts suggesting that the denial of his bathroom RM Request was motivated by his lawsuits, his First Amendment claim must be dismissed.

## XI.   MR. SORENSON FAILS TO STATE AN EQUAL-PROTECTION CLAIM AGAINST DEFENDANTS.

Mr. Sorenson also appears to allege that Defendants committed equal-protection violations, but he fails to identify a similarly-situated class of individuals who have been

treated more favorably than him or state facts showing he was singled out as a class-of-one. (*See* Compl., ¶¶ 4, 67.)

"Absent a threshold showing that [he] is similarly situated to those who allegedly receive favorable treatment, [a] [p]laintiff does not have a viable equal protection claim." *Klinger v. Dep't of Corr.,* 31 F.3d 727, 731 (8th Cir. 1994). The plaintiff must also show that the differential treatment is based on either a suspect classification or a fundamental right. *Patel v. U.S. Bureau of Prisons*, 515 F.3d 807, 815 (8th Cir. 2008.)

In some circumstances, a plaintiff can state an equal-protection claim based on being singled out as a class-of-one. *Engquist v. Oregon Dept. of Agr.*, 553 U.S. 591, 601 (2008). But the alleged intentional disparate treatment must involve the government arbitrarily singling out the plaintiff, rather than the permissible exercise of discretion. *Id.* at 603–04.

Here, because Mr. Sorenson alleges he is treated differently than others civilly committed to MSOP, he must allege facts showing that others at MSOP who "have frequent and uncontrolled urges to use the restroom" (Compl. ¶ 2) are treated differently than him. *See Klinger v. Dep't. of Corr.*, 31 F.3d 727, 731 (8th Cir. 1994) (to sustain an equal protection claim, a plaintiff must show that he belongs to a group that had been treated less favorably than others who are "similarly situated"); *Sorenson*, 2014 WL 4185817, at *20-*21 (granting motion to dismiss equal-protection claim based on the denial of Mr. Sorenson's room-change request when the complaint's factual allegations seemingly indicate that most similarly situated MSOP patients also had their room-change requests denied).

Mr. Sorenson's complaint says nothing about how anyone else with incontinence issues is treated. The closest it comes is stating Mr. Sorenson's incontinence requires him to "use the restroom immediately on a highly frequent basis" that is "more frequent than a person with IBS." (Compl. ¶ 2.) But the complaint says nothing about whether MSOP clients with IBS are allowed to "use the restroom during assigned programming" (*id.*), while he is not.

Similarly, to the extent that Mr. Sorenson is making a class-of-one claim that he is treated differently than MSOP clients with an incontinence issue, this claim fails because he does not indicate that *any* MSOP client is allowed to use the restroom during assigned programming. *See Nolan v. Thompson*, 521 F.3d 983, 990 (8th Cir. 2008) (a class-of-one plaintiff must "provide a specific and detailed account of the nature of the preferred treatment of the favored class, especially when the state actors exercise broad discretion to balance a number of legitimate considerations.") (citation and internal quotation omitted)); *Sorenson v. Minn. Dept. of Corr.*, No. 12-1336 (ADM/AJB), 2012 WL 3150722, at *4–5 (D. Minn. June 20, 2012) (granting motion to dismiss class-of-one equal-protection claim based on denial of funeral furlough because Mr. Sorenson "could not credibly allege that he is the only inmate to be denied an opportunity to attend a loved one's funeral.")

Because Mr. Sorenson failed to plead any facts stating that he was treated differently than similarly situated incontinent people civilly committed to MSOP, or that he has been singled out as a class-of-one, his equal-protection claim must be dismissed.

## XII.  MR. SORENSON FAILS TO STATE A FOURTEENTH AMENDMENT PUNISHMENT CLAIM.

Mr. Sorenson also alleges that the denial of his bathroom RM Reques violated his substantive due-process rights.  (Compl., ¶ 4.)  But Mr. Sorenson alleges no facts showing that the denial of his RM Request was impermissible punishment.

"[C]ivilly committed individuals may [not] be punished without running afoul of the Fourteenth Amendment."  *Karsjens v. Lourey*, 988 F.3d 1047, 1052 (8th Cir. 2021).  When a civilly committed person challenges the conditions of confinement within a facility as unconstitutionally punitive, the *Bell v. Wolfish*, 441 U.S. 520 (1979), standard applies.  *See id.*  When analyzing "whether a condition of confinement is punitive" under the *Bell* standard, "courts decide whether the disability is imposed for the purpose of punishment or whether it is but an incident of some other legitimate governmental purpose."  *Id.*  (citing *Bell,* 441 U.S. at 538) (internal quotation marks omitted).  "Unless the [plaintiff] can show an expressed intent to punish," that determination generally will turn on whether the condition is rationally related to a non-punitive purpose and whether it appears excessive in relation to that purpose.  *Id.* (citing *Bell*, 441 U.S. at 538).  Put another way, under *Bell*, a committed person can prevail by providing "objective evidence that the challenged governmental action is not rationally related to a legitimate government objective or that it is excessive in relation to that purpose."  *See id.* (quoting *Kingsley v. Hendrickson*, 576 U.S. 389, 398 (2015) (internal quotation marks omitted).

Here, Mr. Sorenson fails to state a claim under the *Bell* standard because he does not plausibly allege an expressed intent to punish him or that the policy of not allowing

bathroom use during assigned programming was not rationally related to a legitimate government objective or that it was excessive in relation to that purpose.

"[M]aintaining institutional security and preserving internal order and discipline" and the right of the civilly committed to "treatment consistent with contemporary standards" are legitimate institutional and therapeutic interests for a facility treating civilly committed persons.[9] Mr. Sorenson's complaint alleges no facts showing that Defendant denial of Mr. Sorenson's request for an exception to MSOP's purported policy of not allowing patients to "use the bathroom during programming hours while attending assigned programming" and then return "during the course of that programming event" (Compl. ¶¶ 3, 40) was done with the intent to punish or is excessive in relation to that purpose. *See Mitchell v. Dakota Cty. Soc. Serv.*, 959 F.3d 887, 898 (8th Circ. 2020) (finding plaintiff's conclusory allegation that social workers violated his substantive-due-process rights by fabricating evidence "insufficient to nudge his substantive due process claim from conceivable to plausible.") (citation omitted). Mr. Sorenson's assertion that this bathroom policy "[p]rovided impermissible punishment to the Plaintiff which is not reasonably related to the legitimate needs of the Defendants" falls short of stating a claim under *Bell* because it amounts to mere speculation and fails to "nudge[]" his claim "across the line

---

[9] *Cf. Bell*, 441 U.S. at 546 (discussing such goals in correctional facility context); *Beaulieu v. Ludeman,* 690 F.3d 1017, 1028 (8th Cir. 2012) ("Although an involuntarily committed patient of a state hospital is not a prisoner per se, his confinement is subject to the same safety and security concerns as that of a prisoner.") (citation and internal quotation marks omitted).

from conceivable to plausible." *See Iqbal*, 556 U.S. at 678 (citations and internal quotation marks omitted).

## XIII. EVEN IF THE COURT EXERCISES SUPPLEMENTAL JURISDICTION OVER THE MINNESOTA CONSTITUTION CLAIM, IT MUST BE DISMISSED.

Mr. Sorenson's claims that Defendants' actions violated the Due Process Clause of the Minnesota Constitution, but this claim must be dismissed along with his federal Due Process Clause claim.

There is no private cause of action for violations of the Minnesota Constitution. *Guite v. Wright*, 976 F.Supp. 866, 871 (D. Minn. 1997), *aff'd on other grounds*, 147 F.3d 747 (8th Cir. 1998). And in any event, "[t]he substantive due process inquiries under the United States Constitution and Minnesota Constitution are identical." *BHGN, LLC v. Minnesota*, 598 F. Supp. 2d 995, 1002 n.3 (D. Minn. 2009). Because Mr. Sorenson fails to state a substantive-due-process claim under the United States Constitution, he fails to state a claim under the Minnesota Constitution as well, even if the Minnesota Constitution theoretically afforded him a cause of action. *See Yanke v. City of Delano*, 393 F.Supp.2d 874, 879–80 (D. Minn. 2005) (granting summary judgment in favor of defendants on plaintiff's substantive-due-process claims under both constitutions because due process guaranteed is identical).

## XIV. DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY ON MR. SORENSON'S CONSTITUTIONAL CLAIMS.

Qualified immunity shields "government officials performing discretionary functions . . . from liability for civil damages insofar as their conduct does not violate

clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) (citation omitted). In determining whether a given official is protected by qualified immunity, courts consider two factors: "(1) whether the facts alleged or shown, construed most favorably to the plaintiffs, establish a violation of a constitutional right, and (2) whether that constitutional right was clearly established at the time of the alleged misconduct, such that a reasonable official would have known that the acts were unlawful." *Small v. McCrystal*, 708 F.3d 997, 1003 (8th Cir. 2013). A court may decide which factor to address first. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

Here, even assuming some or all of the Defendants violated Mr. Sorenson's constitutional rights as he asserts, those Defendants are nonetheless entitled to qualified immunity because the right he asserts to an exception to MSOP-wide bathroom policy based on an allegation that he was incontinent, in the face of medical records that indicated the contrary, was not clearly established at the time of the alleged misconduct, such that a reasonable official would have known that the acts were unlawful. *See Simpson v. Overton,* 79 Fed. App'x. 117, 119–20 (6th Cir. 2003) (corrections officers entitled to qualified immunity in incontinent prisoner's suit for denying him bathroom privileges, because they offered prisoner—who had an enlarged prostrate that forced him to urinate three to four times an hour—a "urinal bottle" as an alternative to more frequent access to bathroom); *Small,* 708 F.3d at 1003 (setting forth the qualified immunity factors); *Smith v. City of Minneapolis,* 754 F.3d 541, 546 (8th Cir. 2014) (stating "*the plaintiff must demonstrate* that the law was clearly established") (citation and internal quotation marks

omitted; emphasis added); *Favors v. Mike,* No. 20CV00365 (SRN/DTS), 2021 WL 222935, at *4 (D. Minn. Jan. 22, 2021) (finding defendants entitled to qualified immunity where the plaintiff "has not identified, and the Court has not found, any case law holding that such allegations constitute violations of [his] constitutional rights—let alone sufficiently definite case law as to put any reasonable official in the defendant's shoes on notice") (citations and internal quotation marks omitted).

## XV. MR. SORENSON'S REQUEST FOR PUNITIVE DAMAGES SHOULD BE DISMISSED.

Finally, the Court should also dismiss Mr. Sorenson's request for punitive damages. First, punitive damages cannot be awarded in suits brought under the ADA or RA. *Barnes v. Gorman*, 536 U.S. 181, 189 (2002). Second, punitive damages may only be awarded on a section 1983 claim, "when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." *Coleman v. Rahija*, 114 F.3d 778, 787 (8th Cir. 1997) (internal citations and quotation marks omitted). Mr. Sorenson pleads no facts showing that Defendants' actions were punitive, or that they acted maliciously, callously, or sadistically; he instead mentions punitive damages for the first (and only) time in his prayer for relief. Mr. Sorenson's allegations in this case fall far short of such extreme conduct and thus fail to state a punitive-damages claim.

## CONCLUSION

For the foregoing reasons, Defendants ask that their motion to dismiss be granted and that Mr. Sorenson's complaint be dismissed in its entirety with prejudice.

Dated: June 24, 2021.

Respectfully submitted,

KEITH ELLISON
Attorney General
State of Minnesota

**s/ Brendan Kenny**
BRENDAN KENNY
Assistant Attorney General
Atty. Reg. No. 0391791

445 Minnesota Street, Suite 1400
St. Paul, Minnesota 55101-2131
(651) 583-7799 (Direct)
brendan.kenny@ag.state.mn.us

*Attorneys for State of Minnesota, Minnesota Department of Human Services, Minnesota Sex Offender Program, Krista Lynn Gilpin (individual and official capacities), Nicole D. Boder (individual and official capacities), Eric Skon (individual and official capacities)*

|#4964344-v1

27