**RECEIVED BY MAIL**

**OCT 08 2021**

# United States District Court
# District Of Minnesota

CLERK, U.S. DISTRICT COURT
DULUTH, MINNESOTA

Eric M. Sorenson (aka. Cherrity
Honesty Alexis Meranelli),

    *Plaintiff,*

    *-VS-*

Minnesota Department Of Human
Services ("DHS"); Krista Lynn Gilpin,
Registered Nurse ("RN") Supervisor,
MSOP; Nicole ("Nikki") D. Boder,
Administrative RN Supervisor & ADA
Coordinator, MSOP; Eric Falk, ADA
Coordinator, DHS; Jane/John Does
(unknown individuals); All Defendants
are currently sued in their individual and
official capacities; All Defendants have
and continue to act under the Color of
State Law;

    *Defendants.*

Civil No. <u>21-CV-671-NEB-LIB</u>

## Amended Verified Complaint

Pursuant to 42 U.S.C. §1983, Title II of
the ADA, and Rehabilitation Act



---

## Verified Complaint

## <u>INTRODUCTION</u>

1) Ms. Meranelli comes now and files this Verified Complaint as authorized

under 42 U.S.C. §1983, Title II of the ADA, and the Rehabilitation Act. This

Complaint alleges that the Defendants, in their official and individual

capacities and jointly and/or severally have violated Ms. Meranelli's rights

under the federal and state constitutional, statutory, and common law rights

**SCANNED**

**OCT 08 2021**

to be free from discrimination on the basis of her disabilities via the failure
to provide Ms. Meranelli with a reasonable accommodation.

2) As explained specifically later in this Verified Complaint, Ms. Meranelli
requested a reasonable accommodation of being able to use the restroom
during assigned programming (i.e., treatment groups, module groups, etc...)
because Ms. Meranelli has frequent and uncontrolled urges to use the
restroom to empty her bowels than most people in a general population
group in which Ms. Meranelli cannot control and must use the restroom
immediately on a highly frequent basis in when she needs to the point that it
is more frequent than a person with IBS. Ms. Meranelli has had this issue
after the surgical removal of her gallbladder.

3) The Defendants have steadfastly refused to accommodate Ms. Meranelli
which the ability to use the bathroom and in fact enforced a policy, practice,
procedure, etc... that dictates that Ms. Meranelli cannot use the bathroom
during programming hours while attending assigned programming (i.e.,
treatment groups, modules, etc...).

## BRIEF NATURE OF THE ACTION

4) The Defendants have and continue to perform the following acts and
omissions in their official and individual capacities, such as follows, non-
exclusively:

a. Provided discrimination against Ms. Meranelli via the failure to provide a reasonable accommodation of allowing Ms. Meranelli to be able to use the restroom to relieve her unusually frequent and uncontrollable urges to use the restroom to empty her bowels more frequently than a person with IBS during programming hours while attending her scheduled programming (i.e., treatment groups, modules, etc…) in violation of the Equal Protection and Due Process Clauses of the Fourteenth Amendment of the U.S. Constitution and Minnesota Constitution, Title II of the Americans with Disabilities Act ("Title II ADA"), Section 504 of the Rehabilitation Act ("RA"), Minnesota Human Rights Act ("MHRA"), Negligence, Negligent And Intentional Infliction Of Emotional Distress;

b. Retaliated against Ms. Meranelli for filing of grievances and complaints by denying Ms. Meranelli a reasonable accommodations to her disability and thereby discriminating against Ms. Meranelli on the basis of her disability alleged and specifically explained herein in violation of Ms. Meranelli's Freedom of speech Claim of the First Amendment of the U.S. Constitution and Minnesota Constitution;

c. Provided impermissible punishment to Ms. Meranelli which is not reasonably related to the legitimate needs of the Defendants by not

providing Ms. Meranelli with a reasonable accommodation for her disability in violation of the Due Process Clause of the Fourteenth Amendment of the U.S. Constitution and Minnesota Constitution;

5) Ms. Meranelli is currently suing the Defendants in their official and individual capacities for monetary, declaratory and injunctive relief.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

6) Ms. Meranelli has and continues to exhaust all of her administrative remedies in this Matter available to him and has thus remained unfruitful at all attempts.

## JURISDICTION AND VENUE

7) This Honorable Court has Federal Question jurisdiction over Ms. Meranelli's federal Constitutional and statutory law claims authorized under 28 U.S.C. §1331.

8) This Honorable Court has Supplemental/Pendant jurisdiction over Ms. Meranelli's state law claims as authorized under 28 U.S.C. §1367.

9) This Honorable Court, i.e., the United States District Court for the District of Minnesota, is a proper venue for this Action as authorized by 28 U.S.C. §1391 as the majority of the Defendants live/work/reside within the borders of the State of Minnesota and the majority of the specific acts and omissions

in this Verified Complaint occurred within the borders of the State of Minnesota.

## DECLARATORY AND INJUNCTIVE RELIEF

10)     This Honorable Court has the authority to grant declaratory relief pursuant to 28 U.S.C. §2201 because there is an actual case or controversy between Ms. Meranelli and the Defendants as to the rights of Ms. Meranelli at issue in this Action.

11)     This Honorable Court has the authority to grant any other relief requested in this Complaint as authorized by 28 U.S.C. §2202.

## PARTIES

12)     Plaintiff, Eric M. Sorenson, is and was at all times of this Verified Complaint was a civil commitment detainee. Ms. Meranelli is and was at all relevant times under the care of the DHS. Ms. Meranelli is also under the custody of the State of Minnesota at all times relevant. Moreover, Ms. Meranelli has been and continues to be discriminated against on the basis of her disability – i.e., having the frequent and uncontrollable urge to use the restroom which cannot be scheduled and more frequently than an average person and a person with IBS caused from the side effect of the surgical removal of her gallbladder – by being denied the request for reasonable

accommodations for the said disability – i.e., being allowed to use the restroom during programming hours (i.e., groups, modules, etc.).

13)

14)  Defendant, Minnesota Department Of Human Services ("DHS" or "Defendant DHS"), is an administrative agency of the State of Minnesota and is the administrative agency in charge of overseeing and operating the Minnesota Sex Offender Program ("MSOP"). The DHS has implemented policies, practices, etc. which have had a direct and proximate negative acts and omissions on Ms. Meranelli.

15)  Defendant, Krista Lynn Gilpin ("Gilpin" or "Defendant Gilpin"), is and was at all times relevant herein the Registered Nurse ("RN") Supervisor for the MSOP. As it relates to this Verified Complaint, Defendant Gilpin is in charge of initially making a determination on a reasonable accommodation request. Defendant Gilpin has and continues to deny Ms. Meranelli a reasonable accommodation for her disability as specifically described herein this Verified Complaint and as such is and was actively discriminating against Ms. Meranelli on the basis of her disability. Defendant Gilpin is currently sued in her individual and official capacities.

16)  Defendant, Nicole ("Nikki") D. Boder ("Boder" or "Defendant Boder"), is and at all relevant times was the current Administrative RN

Supervisor and ADA Coordinator for MSOP. As such, Defendant Boder is in charge of the review of the decision to accept or deny a reasonable accommodation to Ms. Meranelli and clientele within the MSOP. Defendant Boder has and continues to deny Ms. Meranelli a reasonable accommodation for her disability as specifically described herein this Verified Complaint and as such is and was actively discriminating against Ms. Meranelli on the basis of her disability. Defendant Boder is currently sued in her individual and official capacities.

17)    Defendant, Eric Falk ("Falk" or "Defendant Falk"), is and was at all relevant times relevant to the specific acts and omissions of this Verified Complaint the ADA Coordinator for DHS. As such, Defendant Falk is in charge of receiving, reviewing, and deciding on denials of ADA requests for reasonable accommodations for clientele within the MSOP, including, Ms. Meranelli. Defendant Falk has and continues to deny Ms. Meranelli a reasonable accommodation for her disability as specifically described herein this Verified Complaint and as such is and was actively discriminating against Ms. Meranelli on the basis of her disability. Defendant Falk is currently sued in her individual and official capacities.

18)    Any other Jane/John Does whose true names are not presently known.

19)      All Defendants have and continue to act under the Color of State Law at all times of the specific acts and omissions of this Verified Complaint.

20)      All Defendants are currently sued in their official and individual capacities for the purposes of this Action.

## FACTUAL ALLEGATIONS

### A. Plaintiff's Current Legal Status As A Pretrial Detainee.

21)      On July 21, 2010, Ms. Meranelli received a memo from one Bruce Reiser, at the time the Warden of the Rush City Minnesota Correctional Facility, as it was written on behalf of the Minnesota Department of Corrections and stated that Ms. Meranelli expired her sentence and that Ms. Meranelli's "discharge... means that [Ms. Meranelli's] rights have been restored."

22)      Shortly thereafter, Ms. Meranelli was civilly committed by a court of competent jurisdiction pursuant to the Minnesota Treatment and Commitment Act ("MCTA").

23)      In short, Ms. Meranelli is currently and at all times relevant a civil commitment detainee.

24)      As such, according to precedent by the higher courts, Ms. Meranelli is entitled to the same rights as a pretrial detainee and better conditions and rights than that of a prisoner.

## B. Plaintiff's Medical History Relevant To The Issues Herein.

25)     On February 26, 2001 at 10:31 PM, Ms. Meranelli had gone into the

St. Cloud Hospital Emergency Trauma Center and was seen by Daniel Fark,

M.D. ("Dr. Fark") and presented with "recurrent right upper quadrant pain."

26)     At that time Ms. Meranelli reported to Dr. Fark in the "history" of the

Emergency Trauma Center Note that:

> "This 21-year-old gentleman presents with recurrent right
> upper quadrant pain. The patient states that yesterday
> around 5:00 or 6:00 in the morning he had developed
> right upper quadrant cramping pain that lasted for a few
> hours and then resolved. He felt fine through the rest of
> the day, was able to eat and take fluids fine. This
> morning around 1:00 he had recurrence of the pain. He
> also did have some nausea and two emeses. Presently he
> has just slight nausea. The discomfort again has been
> right-upper quadrant and crampy in nature. He has not
> had any diarrhea. His last normal bowel movement had
> been last evening. No prior abdominal surgeries. No
> accompanying fever. He actually feels better now than he
> had earlier before coming in. He denies a past history of
> acid peptic disease or hepatobiliary or pancreatic disease.
> He is otherwise healthy and not on chronic medications.
> He has no known allergies."

27)     In the second part of Dr. Fark's Note, he authors:

> "Here in the Emergency Department he did have
> laboratory work obtained that included white count of
> 12.8 with 73.4% neutrophils. SGPT was slightly elevated
> at 54, alkaline phosphatase, bilirubin and lipase normal.
> Right upper quadrant ultrasound was performed and
> reviewed by Dr. Fedor. This showed numerous stones.
> No wall thickening and normal duct. The liver apparently
> was suggestive of a bit of fatty liver, etiology unclear. I

did speak with patient. He does drink some alcohol, but it does not sound like he drinks in excess. He will follow this up through the Medical Group as well. His pain now is resolved. His abdomen is benign. I did discuss the patient with Dr. Dorle, and he will be seeing him in a few days."

28)     The final diagnosis by Dr. Fark for Ms. Meranelli at the time was "Biliary colic" and Dr. Fark in his disposition recommended:

"He is to avoid fatty foods. Return promptly any increased pain or if there is fever or feeling ill. He was given blood pressure sheet for incidental finding of a blood pressure of 158/88. He will see Dr. Dorle within two to three days. Dr. Dorle asked that he call now for the appointment. I did recommend that he see Dr. Lemke, as well, later in the week to discuss potential fatty liver. The patient is agreeable with the plan. He appears well."

29)     On March 13, 2001, Ms. Meranelli was seen at the St. Cloud Hospital for surgery to be performed by Michael J. Dorle, MD ("Dr. Dorle") for the surgical removal of his gallbladder due to the stones that were found in the gallbladder by Dr. Fark upon the right upper quadrant ultrasound.

30)     As a side effect of the removal of Ms. Meranelli's gallbladder, Ms. Meranelli has and continues to have to use the restroom to vacate her bowels on a much more frequent and unscheduled basis than that of a person in general society and also much more frequently and on an unscheduled basis based upon a person with IBS.

31)     In further commenting on the seriousness of Ms. Meranelli's disability from the said side effects of the removal of her gallbladder, Ms. Meranelli cannot hold her bowels frequently for more than a half an hour at a time and then when urges persist to use the restroom Ms. Meranelli cannot hold her bowels and must use the restroom immediately.

32)     Ms. Meranelli would be qualified for the service of using the restroom in the Defendants custody if she were not disabled.

### C. Request And Denial Of Reasonable Accommodations On The Basis Of Plaintiff's Disability.

33)     On September 6, 2020 Ms. Meranelli submitted a "Client Request For Reasonable Modification" ("RM Request") to the client rights coordinator for MSOP-ML Complex Unit 1-B ("CRC").

34)     The RM Request had asked Ms. Meranelli "Does Health Services or Clinical Staff have medical documentation of the impairment?" and if the documents where available to attach them. Ms. Meranelli responded "yes."

35)     Next, the RM Request asked Ms. Meranelli "are you currently receiving any assistance for this impairment through a medical order?" and Ms. Meranelli marked "no."

36)     In question three of the RM Request it asked for the "reasonable modification requested:" and Ms. Meranelli authored "to be able to use the restroom during assigned programming."

37)   In question four the RM Request asked "How will the requested modification assist you to improve your ability to perform basic activities of daily living?" and Ms. Meranelli responded "[Ms. Meranelli] will be able to use the restroom during assigned programming without being asked to leave the programming event in situations where [he] feel[s] the urge to use the bathroom badly which could not have been planned for prior to the programming event."

38)   In question five of the RM Request the RM Request asks "was this request submitted previously and a determination already made?" and Ms. Meranelli marked "no." Ms. Meranelli then signed the form and dated it September 6, 2020.

39)   In the additional comments section on the RM Request states "A lot of the programming that I attend have a rule that I cannot leave to use the restroom during the course of that programming event. If I do leave then I will [not be] able to return to the event until the next time. Further, the staff will not allow use of the hallway bathrooms unless there is a medical authorization. The library also does the same – i.e., unless there is a medical authorization to use the restroom, I am not able to use the one in education. The walk back to the unit is sometimes implausible when I have to use the restroom due to my gallbladder being removed."

40) On September 9, 2020, the Health Services Department, presumptively Defendant Gilpin, received the said RM Request Ms. Meranelli provided to the CRC on September 6, 2020.

41) Based upon the receipt of the RM Request, Defendant Gilpin filled out a form the Defendants dub "Determination of Client Request And Reasonable Modification Plan" ("RM Determination") and dated and signed the RM Determination September 18, 2020.

42) In the RM Determination, the form initially asks "has this request for a reasonable modification been previously submitted and rejected?" Defendant Gilpin marked "no."

43) As part of the first question, and as a result of marking "no" to the initial question, the RM Determination asks "if no, continue" and Defendant Gilpin authored "Mr. Sorenson reports 'I have had my gallbladder removed and thus have to use the bathroom on a spur of the moment a lot."

44) In the next section the RM Determination asks "Does the client have a medically documented physical or mental impairment?" and Defendant Gilpin marked "No".

45) As a result of marking "no" to the second section in the RM Determination, the form asks Defendant Gilpin to print and sign her name below and add comments as necessary." Defendant Gilpin authors "Health

services does not have a documented physical impairment for Mr. Sorenson as he outlined above. He had a laparoscopic cholecystectomy 3/13/2001 without any complications. The concern with urgent bathroom use appears to be a new issue which has not been addressed with his primary nursing team or provider per chart review over the last 1.5 years. He did not attend his recent annual and physical exam with his primary provider (7/2020) where this topic should have been addressed. APE from 7/2019 had no mention of this being a concern for the client. He has seen the dietitian for DMII referral back in 2019 with no discussion of bowel issues. Mr. Sorenson notes to have diagnosis of DMII, hypertension, chronic folliculitis, and chronic sinusitis. He has a significant history of poor medication compliance and not attending his appointments in health services."

46)     As a further result of checking "no" in the second section of the second section of the RM Determination form Defendant Gilpin signed and dated the form.

47)     Then the RM Determination was sent to Defendant Boder and she filled out the next section after the RM Determination form where it stated "Reasonable Modification Plan approved" and Defendant Boder checked "No."

48)     As a result of checking "no" to the respective question, the RM Determination form then states "if no, describe any pertinent information taken into consideration:" and Defendant Boder authors "This request does not meet the definition of a disability. Mr. Sorenson is encouraged to work with his primary nursing team on this issue as there is no current documentation of this being a concern for him. He is also encouraged to attend his next annual physical exam appointment where he can discuss this concern with his provider as well."

49)     Defendant Boder then signed and dated the RM Determination and returned it to Ms. Meranelli via the internal mails.

50)     In a further attempt to resolve the denial of the RM Request, Ms. Meranelli appealed the RM Determination via a form the Defendants dub "ADA Modifications Appeal Request" ("ADA Appeal") and submitted the ADA Appeal on September 22, 2020 to the CRC.

51)     Ms. Meranelli attached a document she self-authored titled "Additional Information To Be Considered On ADA Request Appeal" ("ADA Additional Appeal Info") in which Ms. Meranelli authors:

"Within the ADA request (see attached) the staff stated that I did not raise the issue with my primary nursing team. However, under ADA law I am not obligated to do so. Rather, with all due respect just because a person does not bring up the topic does not mean that they do not have the issue. Further, with all due respect, the fact that allegedly I missed the annual physical exam cannot be held against me as the ADA law does not recognize this as a

reason to refrain from granting me the requested accommodation. Furthermore, the staff state that I have not met the definition of disability under the ADA. However, that definition, by amendment of the ADA the definition has been held by the courts to be the broadest definition as possible. In fact, the definition of ADA means simply:"

> "The term "disability" means, with respect to an individual— (A) a physical or mental impairment that substantially limits one or more major life activities of such individual;     (B) a record of such an impairment; or (C) being regarded as having such an impairment (as described in paragraph (3))." See 42 U.S.C. §12102(1)(A)-(C).

A major life activity is defined as:

> (A)   In general. For purposes of paragraph (1), major life activities include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working.     (B) Major bodily functions. For purposes of paragraph (1), a major life activity also includes the operation of a major bodily function, including but not limited to, functions of the immune system, normal cell growth, digestive, bowel, bladder, neurological, brain, respiratory, circulatory, endocrine, and reproductive functions. See 42 U.S.C. §12102(2)(A)&(B)

Furthermore, the fact that the term disability is broad in the ADA is codified in the ADA as: "The definition of disability under [the ADA] shall be construed in favor of broad coverage of individuals under this Act, to the maximum extent permitted by the terms of [the ADA]."

Simply, as it relates to the request and whether I meet the definition of "disability" under the ADA, the ADA clearly defines disability as "a physical or mental impairment that substantially limits one or more major life activities of such individual". While defining a "major life activity as

"the operation of a major bodily function, including but not limited to... functions of the... bowel [and] bladder...". Clearly as exhibited by the medical documentation and the ADA request submitted originally, I do have problems with my bladder and bowels. Thus, I do fit the definition of disability under the ADA.

Thus, I am still requesting the same reasonable accommodations as originally requested in the original ADA request.

Thank you.

52)     Ms. Meranelli then signed the ADA Additional Appeal Info and sent that and the ADA Appeal, RM Request Determination, and the RM Request ("Collectively the "ADA Appeal Packet") to the CRC. The CRC then immediately sent the ADA Appeal Packet to Defendant Falk.

53)     On September 24, 2020 the CRC emailed Defendant Falk and delivered the Appeal Packet to Defendant Falk at the same time.

54)     After not hearing from Defendant Falk for some time, Ms. Meranelli asked the CRC to e-mail Defendant Falk for a determination on the denial of the RM Request.

55)     Then on October 22, 2020 Defendant Falk responded to the ADA Appeal Packet via letter on DHS letterhead stating as follows:

"This correspondence disposes of your appeal on September 23, 2020, of the denial of your request for reasonable modification as a client in the Minnesota Sex Offender Program (MSOP). You asked to use the lavatory for urges for which you could not have planned during assigned programming without being banned from rejoining the event because of you having problems with your bladder and bowels.

Title II, Public Services, of the federal statutes, the Americans with Disabilities Act (ADA), the ADA Amendments Act, and their regulations state that no qualified individual with a disability shall, because of such disability, be denied the benefits of the services or excluded from participation in the programs of a public entity or be subjected to discrimination by any such entity. A qualified individual with a disability is a person who, with or without a reasonable modification of policies, procedures, or practices; the removal of architectural, communication, or transportation barriers; or the provision of auxiliary aids or services, meets the essential eligibility requirements for the receipt of services or the participation in programs from a public entity like MSOP. A disability is a physical or mental impairment that substantially limits a major life activity, a record of such an impairment, or being regarded as having such an impairment, regardless of it being episodic if it would substantially limit a major life activity when active. An impairment is a physiological disorder affecting the body system. Substantially limits means to be significantly restricted in the condition, manner, or duration of performing a major life activity that most people in the general population can do with no to little difficulty. A major life activity is a basic action of daily living and includes major bodily functions like urination or defecation.

Your medical record indicates that you underwent surgery to have your gallbladder removed on March 13, 2001. An operation with recovery is not a disability, but complications from a medical procedure can qualify. However, neither at your annual physical examination in July of 2019 nor at your dietary consultation in the same year did you complain of any incontinence. Health Services has no supporting medical documentation of your claimed impairments. A person who cannot sit through an entire meeting is not substantially limited in bladder or bowel functions merely due to sudden urges because many people must relieve themselves frequently for a variety of reasons. Such people do not necessarily have a disability. While your health condition is limiting, it is not substantially limiting. Consequently, it does not qualify as a disability.

Therefore, your appeal is denied.

Americans with Disabilities Act Coordinator

Equal Opportunity and Access Division"

56)     Thus, it is important to note that Defendants Falk, Boder, and Gilpin all recognize that Ms. Meranelli has a limitation that effects one or more of her bodily functions, i.e., her gallbladder being removed from a surgical exercise and causing Ms. Meranelli to have to use the restroom on a frequent basis beyond that of a person with that of IBS, and fail to provide the reasonable accommodation to Ms. Meranelli.

57)     The Defendants do accept federal funding through their parent organization of Defendant DHS.

58)     Since Ms. Meranelli's inception into the MSOP program in 2011 till present time, the Defendants have pegged Ms. Meranelli as a person whom files and knows how to file lawsuits and grievances against the Defendants and that files a lot of them.

59)     Because of that the Defendants have denied Ms. Meranelli her request for reasonable accommodations for her disability as explained earlier in this Verified Complaint.

60)     The Defendants have a federal legal and constitutional duty to provide Ms. Meranelli with a reasonable accommodation for her disability and have failed to do so via the specific acts and omissions of this Verified Complaint.

61)     When Ms. Meranelli is unable to use the restroom to evacuate her bowels it causes Ms. Meranelli extreme and uncomfortable prolonged pain

(on a pain scale of 1-10, 10 being the max, the pain is about a 10 and at times a 10+).

62)     There is no legitimate rational basis, and none was provided to Ms. Meranelli by the Defendants, to have denied Ms. Meranelli a reasonable accommodation to Ms. Meranelli.

63)     By denying Ms. Meranelli a reasonable accommodation for her disability, by reason of the specific  facts alleged herein this Verified Complaint, the Defendants intentionally neglected to provide Ms. Meranelli with a reasonable accommodation for her disability for reasons to punish Ms. Meranelli and to cause Ms. Meranelli extreme and outrageous prolonged and unnecessary pain.

### D. Injury Sustained To Plaintiff Because Of Discrimination On The Basis Of Plaintiff's Disability From Defendants.

64)     Based upon the Defendants actions of denying Ms. Meranelli a reasonable accommodation on the basis of her disabilities the Defendants have caused Ms. Meranelli to sustain serious injury to her person by, non-exclusively, lowering the quality of Ms. Meranelli's life, causing Ms. Meranelli extreme prolonged and unnecessary pain, causing Ms. Meranelli an increased risk at causing serious life threatening diseases such as colon and prostate cancer, serious and severe emotional, psychological, and mental

distress, etc…, mistrust in the government, failure to accommodate for serious Plaintiff's disability, loss of liberty, personal humiliation.

## COUNTS ALLEGED

## COUNT I.

## DEFENDANTS INTENTIONAL DISCRIMINATION AGAINST MS. MERANELLI ON THE BASIS OF HER DISABILITY VIA FAILURE TO PROVIDE MS. MERANELLI A REASONABLE ACCOMMODATION FOR HER DISABILITY

65)    Ms. Meranelli incorporates by reference the above paragraphs in their entirety into this section of this Verified Complaint as if fully referenced herein this section.

66)    Via the  above acts and omissions of failing to provide Ms. Meranelli with a  reasonable accommodation on the basis of her disability, as specifically described in this Verified Complaint above, the Defendants have violated Ms. Meranelli's well-established rights under the Title II of the Americans with Disabilities Act ("Title II ADA"), Section 504 of the Rehabilitation Act ("RA"), Minnesota Human Rights Act ("MHRA").Until and unless this Honorable Court grants the relief requested to Ms. Meranelli, the Defendants will continue to engage in life threatening injuries to Plaintiff and denial of Ms. Meranelli's rights.

## COUNT II.

67)      Ms. Meranelli incorporates by reference the above paragraphs in their entirety into this section of this Verified Complaint as if fully referenced herein this section.

68)      Via the above acts and omissions of failing to provide adequate medical care to the Ms. Meranelli by Defendants failure to provide Ms. Meranelli with reasonable accommodations to her disability, the Defendants have violated the Ms. Meranelli's well-established rights under the Due Process Clauses of the Fourteenth Amendment of the U.S. Constitution and Minnesota Constitution which is sought to be enforced under 42 U.S.C. §1983.

69)      Until and unless this Honorable Court grants the relief requested to Ms. Meranelli, the Defendants will continue to engage in life threatening injuries to Ms. Meranelli and denial of Ms. Meranelli's rights.

70)

## COUNT III

## PROVIDING IMPERMISSIBLE PUNISHMENT TO MS. MERANELLI VIA NOT PROVIDING A REASONABLE ACCOMMODATION TO MS. MERANELLI'S DISABILITY.

71)      Ms. Meranelli incorporates by reference the above paragraphs in their entirety into this section of this Verified Complaint as if fully referenced herein this section.

72)     Because the Defendants have provided impermissible punishment to

Ms. Meranelli without any legitimate government interest for doing so by

denying Ms. Meranelli a reasonable accommodation for her disability, the

Defendants have violated Ms. Meranelli's well-established rights pursuant to

the Due Process Clause of the Fourteenth Amendment of the U.S.

Constitution and Minnesota Constitution.

73)     Until and unless this Honorable Court grants the relief requested to

Ms. Meranelli, the Defendants will continue to engage in life threatening

injuries to Ms. Meranelli and denial of Ms. Meranelli's rights.

## **PRAYER FOR RELIEF**

**WHEREFORE,** Ms. Meranelli prays this Honorable Court for an Order
as follows:

1) Issue declaratory relief declaring each and every violation found in this Complaint to be in violation of the respective right of the Plaintiff;

2) Issue a Temporary Restraining Order, Preliminary Injunction, and Permanent Injunction against the Defendants, their agents, assigns, and successors in office stating:

   a. Allow the Plaintiff to use the bathroom either on or off the Plaintiff's living unit during programming hours if the Plaintiff needs to use the bathroom during groups such as treatment groups, modules, library usage, dinning, etc...;

   b. Refrain from further retaliation against the Plaintiff on the basis of her disability;

   c. Refrain from partaking in the same or similar actions and omissions as described in this Verified Complaint.

3) Issue nominal damages against the Defendants and in favor of the Plaintiff in the amount deemed just and proper from this Honorable Court for each and every violation found in this Verified Complaint;

4) Issue compensatory damages against the Defendants jointly or severally;

5) Issue punitive damages against the Defendants jointly or severally;

6) Issue pre- and post- judgment award of interest since the initial filing of this Action;

7) Issue attorney fees award in favor of the Plaintiff in the amount deemed just and proper or as otherwise briefed;

8) Issue costs and fees associated with this Action;

9) Issue any other just and equitable relief this Honorable Court deems appropriate.

Dated: <u>Tuesday, September 28, 2021</u>   Respectfully Submitted:



Eric M. Sorenson

(aka. Cherrity Honesty-Alexis Meranelli)
1111 Highway 73
Moose Lake, Minnesota 55767
**Plaintiff,** *Pro Se*

## <u>COMPLAINT VERIFICATION</u>

I, Eric Michael Sorenson (aka. Cherrity Honesty-Alexis Meranelli), being the above named Plaintiff, hereby state and certifies under the Penalties of Perjury pursuant to 18 U.S.C. §1621 that all of the paragraphs stated in this Verified Complaint are true and correct to the best of my ability with the exception of those

paragraphs alleged under information and belief, and as to those paragraphs, I believe those to be true and correct to the best of my information and beliefs.

Dated: <u>Tuesday, September 28, 2021</u>   Respectfully Submitted:


X
_____
Eric M. Sorenson


(aka. Cherrity Honesty-Alexis Meranelli)
1111 Highway 73
Moose Lake, Minnesota 55767
**Plaintiff, *Pro Se***