UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Eric M. Sorenson,<br>*also known as Cherrity Honesty-Alexis Meranelli*,<br><br>    Plaintiff,<br><br>v.<br><br>State of Minnesota et al.,<br><br>    Defendant. | Case No. 21-cv-671 (KMM/DJF)<br><br>**REPORT AND RECOMMENDATION** |

  Plaintiff brought this lawsuit under 42 U.S.C. § 1983, the Americans with Disabilities Act ("ADA"), the Rehabilitation Act ("RA") and the Minnesota Human Rights Act ("MHRA") based on alleged disability discrimination by the Minnesota Sex Offender Program.  (ECF No. 47 ¶ 1.) The crux of Plaintiff's claims is that Defendants denied her any reasonable accommodation for a health condition by refusing to permit necessary restroom breaks during therapeutic programming. This matter is before the Court on Defendants' Motion for Summary Judgment (ECF No. 183) and Plaintiff's Motion for Voluntary Dismissal Without Prejudice and Notice ("Motion for Voluntary Dismissal") (ECF No. 200).  For the reasons given below, the Court recommends denying Plaintiff's Motion for Voluntary Dismissal, granting Defendant's Motion for Summary Judgment, and dismissing this matter with prejudice.

I.  **Background**

   a.  **Factual Background**

      i.  **The Minnesota Sex Offender Program**

The Minnesota Sex Offender Program Moose Lake Facility ("MSOP") operates a full-service primary care health clinic. (ECF No. 188 ¶ 3.) All MSOP detainees go through medical screening within 72 hours of their admission to the facility, where they are seen by a health services staff member for a physical, including a basic nursing assessment that includes an assessment of bowel and abdomen sounds and a review of past medical history. (*Id.* ¶ 4.) MSOP also offers all detainees annual physical examinations, as well as more frequent examinations and specialized appointments as their medical needs require. (*Id.* ¶ 5.) MSOP Health Services keeps detailed medical records for all detainees from their interactions with MSOP Health Services, as well as medical records for any treatment a detainee receives from an outside medical provider. (*Id.*)

Group therapy is one of the fundamental treatment options MSOP provides to detainees. (ECF No. 187 ¶ 5.) Participation in group therapy is voluntary. (*Id.* ¶ 6.) Those who choose to participate in group therapy are assigned to a "core group" and other programming, including individual sessions with a primary therapist. (*Id.*) Each core group is led by two co-facilitators who are clinical staff at MSOP. (*Id.*) Each core group governs itself differently, as the co-facilitators develop expectations and behavioral norms to govern interactions within the group. (*Id.* ¶ 8.) There is no MSOP-wide policy dictating that detainees who leave group programming to go to the restroom cannot return to their group sessions. (*Id.* ¶ 10.) Instead, attendance expectations for each core group are determined by the co-facilitators of that group. (*Id.*) Jannine Herbert, the Executive Clinical Director at MSOP, states that in her training and experience leading group therapy sessions, "group members arriving late, leaving early, or leaving and returning

during group sessions often disrupts group cohesion and interrupts group process, structures and the treatment experience of individuals." (*Id.* ¶ 9.)

### ii. Plaintiff's History at MSOP

Plaintiff has been civilly detained at MSOP since approximately 2010. (ECF No. 47 at 8.) In February 2001, prior to her civil detention, Plaintiff visited the St. Cloud Hospital Emergency Trauma Center and presented with recurrent right upper quadrant pain. (*Id.* at 9.) The doctor found she had numerous gallstones. (*Id.*) Based on that diagnosis, she returned to the hospital on March 13, 2001 to have her gallbladder surgically removed. (*Id.* at 10; ECF No. 188 ¶ 6.) Plaintiff alleges a side-effect of this procedure is that she needs to use the bathroom to vacate her bowels "on a much more frequent and unscheduled basis than that of" the average person, "and also much more frequently and on an unscheduled basis" than "a person with IBS." (ECF No. 47 at 10.)

From July through December 2020, MSOP assigned Plaintiff to a core group that Clinical Program Therapist James Martinez and Plaintiff's then-primary therapist, Maija Swanson, facilitated. (ECF No. 194 ¶ 4.) This core group included detainees in Phase I of their MSOP treatment and carried the expectation that—absent an emergency or other documented compelling circumstance—participants would arrive within five minutes of the scheduled programming start time and remain there for the duration of the programming. (*Id.* ¶¶ 4–5.) The group's co-facilitators asked any group member who chose to leave a session not to return until the next session. (*Id.* ¶ 5.) If a group participant provided a documented reason or explained the need to leave a session in advance, however, the co-facilitators would allow the participant to leave mid-session and return. (*Id.* ¶ 6.) Mr. Martinez states that Plaintiff has a sporadic history of attending group programming. (*Id.* ¶ 8.) For example, in the third quarter of 2020 she attended 84% of her assigned core groups, and in the fourth quarter of 2020 she attended 0% of her assigned core

3

groups. (*Id.*) Mr. Martinez states that Plaintiff claimed the basis for her total decrease in attendance was that she had not yet received a COVID vaccine. (*Id.*)

Plaintiff has never progressed past Phase I of treatment, and in Mr. Martinez's opinion, a large reason why is that she has "problems committing to consistent attendance to assigned programming." (*Id.* ¶ 10.) She often arrives late to programming because she claims to have overslept and is asked to leave due to her tardiness. (*Id.*) Mr. Martinez states that she will become engaged in the group for several sessions, then disappear without explanation for several weeks or months. (*Id.*) Sometimes the group's facilitators ask her to leave sessions because, when presented with challenging feedback, she will disrupt the session by arguing past the point of being respectful. (*Id.* ¶ 11.)

### iii. Plaintiff's Reasonable Modification Request

On September 6, 2020, Plaintiff made a formal request seeking authorization to use the restroom during assigned programming ("Reasonable Modification Request"). (ECF No. 29-1 at 3; ECF No. 190 ¶ 3.) Plaintiff supported her request with: (1) a March 21, 2001 St. Cloud Hospital Preoperative Document indicating Plaintiff had symptomatic cholelithiasis (gallstones) treated with a laparoscopic cholecystectomy; (2) a March 27, 2002 St. Cloud Hospital Emergency Room document indicating Plaintiff visited the hospital with reports of nausea, diarrhea, back and abdominal pain; and (3) a February 26, 2003 St. Cloud Hospital Emergency Room note indicating Plaintiff visited the hospital with recurrent right upper quadrant pain without diarrhea. (ECF No. 29-1 at 10–12.) Registered Nurse Practitioner Krista Gilpin reviewed Plaintiff's Reasonable Modification Request and denied it on September 18, 2020. (ECF No. 29-1 at 7–8.) She concluded that the documentation Plaintiff submitted failed to demonstrate a history of uncontrollable bowel movements and encouraged Plaintiff to attend her next annual physical exam appointment to discuss her concerns with her medical provider. (*Id.* at 8.)

Plaintiff appealed the decision to the Minnesota Department of Human Services ("DHS") on September 23, 2020. (*See id.* at 6.) The DHS ADA Coordinator denied the appeal, concluding that Plaintiff had never complained about incontinence during previous medical appointments, and that MSOP Health Services had no documentation supporting Plaintiff's claimed impairments. (*Id.*) DHS further reasoned that a person who cannot sit through an entire meeting without a restroom break is not "substantially limited" for purposes of determining disability as defined under the ADA. (*Id.*) This lawsuit followed.

### iv. Plaintiff's Medical Records

Nicole Boder, the Health Services Director at MSOP, reviewed Plaintiff's medical records in connection with this litigation. (*See* ECF No. 188.) Ms. Boder noted that Plaintiff did not indicate any concerns with her bowel movements on admission to MSOP, and that the notes of Plaintiff's initial medical screening described no bowel abnormalities or sounds. (ECF No. 188 ¶ 6.) Instead, the notes indicated Plaintiff underwent gallbladder removal in 2001 without complications. (*Id.*) In addition, upon reviewing records of medical services Plaintiff had received at MSOP for over a one-year period, Ms. Boder found no indication of impairment related to Plaintiff's bowel function. (*Id.* at ¶ 14.) The medical notes reflect that Plaintiff visited MSOP Health Services on multiple occasions from 2018-2020 for general physical examinations, back pain and diabetes, and did not report any abnormal bowel function. (*See* ECF Nos. 188, 188-1, 188-2, 188-3, 188-4, and 188-5.)

On March 13, 2018, a Health Services nurse examined Plaintiff for cold symptoms, dizziness and stomach pain. (ECF No. 188-3 at 2.) Plaintiff reported that she felt a pain in her stomach the previous day while eating, after which she felt she was going to pass out. (*Id.*) The

5

pain had subsided by the time of the appointment. (*Id.*) The examining nurse noted no abnormal bowel sounds and Plaintiff specifically reported she was having normal bowel movements. (*Id.*)

In connection with this litigation, board-certified gastroenterologist Daniel McKee, M.D., reviewed Plaintiff's Amended Complaint, her Reasonable Modification Request and appeal records, and over 1,500 pages of Plaintiff's medical records for the period from 2001 through 2020. (ECF No. 193 at 2-3.) Based on his review of these records, Dr. McKee reported that he "was unable to find a single reference of a complaint of chronic diarrhea in the records, other than in [Plaintiff's] Amended Verified Complaint." (*Id.* at 3.) Dr. McKee further explained that if Plaintiff had chronic diarrhea following her gallbladder removal, those symptoms would emerge immediately or very soon after the surgery, and only in rare cases would they develop at a much later date. (*Id.* at 4.) Since there was no history of diarrhea documented in Plaintiff's medical records, and "[p]resumably, an individual with such symptoms would have addressed them with a medical provider at some point," Dr. McKee found there is no evidence to support Plaintiff's claim that she needs to be able to use the restroom to relieve unusually frequent and uncontrollable urges to have a bowel movement. (*Id.* at 4.)

## II.    Procedural Background

### a.    Plaintiff's Claims

Plaintiff initiated this lawsuit on March 8, 2021 (ECF No. 1). In her original Complaint, she raised constitutional claims under both the United States and Minnesota Constitutions, as well as statutory claims under the ADA, the RA and the MHRA, and several tort claims arising under state common law. (*See generally id.*) Defendants filed a Motion to Dismiss Plaintiff's Complaint on June 24, 2021 (ECF No. 25). The District Judge granted the motion in part, allowing Plaintiff's

ADA, RA, MHRA and Fourteenth Amendment impermissible punishment claims to proceed, but dismissing several defendants and the remainder of her original claims (ECF No. 44).

On October 8, 2021, Plaintiff filed an Amended Complaint (ECF No. 47),[1] which replaced previous Defendant Erik Skon with Defendant Eric Falk and added a constitutional claim for inadequate medical care. (*See id.*) The claims thus remaining in this action are: Plaintiff's disability discrimination claims under the ADA, the RA and the MHRA; Plaintiff's inadequate medical care claim; and Plaintiff's impermissible punishment claim. (*Id.*) She asserts these claims against DHS and all individual Defendants in both their official and individual capacities.

### b. Relevant Discovery History

Defendants issued their First Set of Discovery Requests to Plaintiff on March 7, 2022, and she responded on March 31, 2023. (ECF No. 132-1 at 2–12; ECF No. 132-2 at 14–34.) Contending Plaintiff's responses were inadequate, Defendants filed a Motion to Compel on May 25, 2022. (ECF No. 129, 131.) The Court granted that motion on July 5, 2022 and ordered Plaintiff to supplement her responses. (ECF No. 141 at 3–13.) Plaintiff provided Defendants with supplemental discovery responses on July 16, 2022 and August 11, 2022. (*See* ECF No. 163 ¶ 2; ECF No. 163-1 at 25–54.) Arguing Plaintiff's responses were still deficient with respect to Interrogatory Numbers 2, 4, 7–12 and 14, Defendants moved for sanctions on October 11, 2022. (*See* ECF Nos. 160 and 162 at 11–16.) The undersigned Magistrate Judge issued a Report and Recommendation finding Plaintiff's discovery responses were deficient and recommending Plaintiff be precluded from offering evidence withheld from Defendants in discovery. (ECF No.

---

[1] Plaintiff filed a substantively identical amended complaint on October 29, 2021. (ECF No. 78.) Since the Court did not grant Plaintiff leave to file a second amended complaint, and that document is identical to the amended complaint filed October 8, 2021, the Court treats the October 8, 2021 Amended Complaint (ECF No. 47) as the operative pleading in this matter.

167.) On January 19, 2023, the District Judge adopted the Report and Recommendation (ECF No. 169). Plaintiff is thus barred from supporting her Motion for Voluntary Dismissal or opposing Defendants' Motion for Summary Judgment with information responsive to Defendants' Interrogatories that she did not previously produce in response to their requests.

### III.     Analysis

#### a.  Motion for Voluntary Dismissal

Under Federal Rule of Civil Procedure 41(a), a party seeking to voluntarily dismiss an action after the opposing party files a motion for summary judgment must obtain a court order. The primary purpose of this rule is "to prevent voluntary dismissals which unfairly affect the other side." *Paulucci v. City of Duluth*, 826 F.2d 780, 782 (8th Cir. 1987). A "decision whether to allow a party to voluntarily dismiss a case rests upon the sound discretion of the court." *Thatcher v. Hanover Ins. Grp., Inc.*, 659 F.3d 1212, 1213 (8th Cir. 2011) (quoting *Hamm v. Rhone-Poulenc Rorer Pharm., Inc.*, 187 F.3d 941, 950 (8th Cir. 1999)). Factors courts should consider include "whether the party has presented a proper explanation for its desire to dismiss; whether dismissal would result in a waste of judicial time and effort; and whether a dismissal would prejudice defendants." *Id.* (quoting *Hamm*, 187 F.3d at 950). Courts do not allow for voluntary dismissal when it is used "merely to escape an adverse decision[.]" *Id.* (quoting *Hamm*, 187 F.3d at 950). "The time and effort invested by the parties, and stage to which the case had progressed, are among the most important factors to be considered in deciding whether to dismiss without prejudice, and, if so, on what conditions." *Kern v. TXO Prod. Corp.*, 738 F.2d 968, 972 (8th Cir. 1984).

These factors counsel in favor of denying Plaintiff's Motion for Voluntary Dismissal. First, discovery is now closed. Having reached the dispositive motion stage, the parties have invested considerable resources in litigating this matter. This is especially true for Defendants, who in

addition to moving for summary judgment filed a partially successful motion to dismiss (ECF Nos. 25, 44), and as a result of Plaintiff's intractable discovery noncompliance, were forced to file a Motion to Compel (ECF No. 129) and a Motion for Sanctions (ECF No. 160), which the Court granted (ECF Nos. 147, 167, 169). Defendants also have had to address no fewer than 15 non-dispositive Motions from Plaintiff. (*See* ECF Nos. 17, 21, 34, 39, 50, 53, 61, 64, 68, 72, 100, 110, 114, 145, 170, & 200.) Moreover, Defendants' factual and legal positions in a future lawsuit on the same claims would be disadvantaged if Plaintiff is allowed to dismiss this action without prejudice. The sanctions the Court imposed against Plaintiff bar her from attempting to support her allegations with information she purposefully withheld from Defendants in discovery in this action. But in a future lawsuit, Plaintiff could either circumvent those sanctions by providing information she is now barred from presenting, or—more likely—force Defendants to go through the same discovery fights again, further driving up the time and expense needed for Defendants to put this matter to rest. These facts compel a finding that Defendants would be prejudiced by permitting Plaintiff to voluntarily dismiss. *See Thatcher*, 659 F.3d at 1215 (indicating that prejudice to the defendant is primarily a question of the stage of litigation the parties have reached and the resources the defendant has expended).

Allowing a voluntary dismissal would also waste the Court's resources. Plaintiff's discovery conduct has resulted in extensive and time-consuming non-dispositive motion practice on both sides, which the Court has had to address. The Court notes that Plaintiff continues to demonstrate an unwillingness to respect the Court's orders. (*See, e.g.*, ECF No. 205 at 8, stating that "with all due respect, [Plaintiff] diverges from this Honorable Court's issu[ed] sanctions, as she still believes in her of hearts that she has provided sufficient responses to [] discovery requests[,]" and that because she does not believe she filed deficient responses despite the Court's

multiple orders, the Court should not consider Defendants' Motion for Sanctions as an appropriate expenditure of their resources in determining whether a voluntary dismissal would prejudice them.) The Court can only assume that if Plaintiff was allowed to refile her lawsuit and start anew, similarly extensive and litigious motion practice would be required. This would be a considerable waste of the Court's time, given that this case is now ripe for a decision on the merits. *See, e.g.*, *Witzman v. Gross*, 148 F.3d 988, 992 (8th Cir. 1998) (noting that this factor alone can support denial of a motion for voluntary dismissal).

Furthermore, Plaintiff's asserted reasons for dismissal are unpersuasive. Plaintiff states that she seeks dismissal because she became aware of a process by which she can obtain bathroom passes that are short of an ADA accommodation, but upon further negotiation may result in a sufficient accommodation such that she does not need to proceed further in this matter. (ECF No. 201 at 2–3.) Plaintiff readily concedes that if Defendants do not adequately resolve her demands through this informal process, she may refile her claims. (*Id.* at 3.) Indeed, the crux of Plaintiff's motion is to avoid a decision on Defendants' Motion for Summary Judgment, so that while she engages in settlement negotiations, she can "hold[] the feet of the Defendants to the flame … so that, *if* something goes awry, [she] can seek her relief from" the Court by restarting this litigation. (ECF No. 205 at 3, emphasis in the original.) This action is nearly three years old and ready for a decision on the merits. Extending Plaintiff's opportunity to engage in settlement negotiations from a stronger tactical position—with the open threat of refiling this lawsuit if she does not get what she wants—is not a valid basis for voluntary dismissal. The Court recommends denying Plaintiff's Motion for Voluntary Dismissal for all of the above reasons.

### b. Motion for Summary Judgment

#### i. Legal Standard

On a motion for summary judgment, the Court must view "all evidence and inferences in the light most favorable to the non-moving party." *Pena v. Kindler*, 187 F. Supp. 3d 1070, 1076 (D. Minn. 2016) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). Summary judgment is appropriate when, in this light, "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is genuine only if the evidence is such that it could cause a reasonable jury to return a verdict for either party. *Pena*, 187 F. Supp. at 1076.

The movant "bears the initial responsibility of informing the district court of the basis for its motion," and must identify "those portions of [the record] … which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *see* Fed. R. Civ. P. 56(c)(1)(A); *Pena*, 187 F. Supp. 3d at 1076. If the movant meets that burden, the nonmovant "may not rest upon allegations, but must produce probative evidence sufficient to demonstrate a genuine issue for trial." *Davenport v. Univ. of Ark. Bd. of Trustees*, 553 F.3d 1110, 1113 (8th Cir. 2009) (citing *Anderson*, 477 U.S. at 247–49). If a party fails to properly address another party's assertion of fact as required by Rule 56(c), the Court may: "(1) give an opportunity to properly support or address the fact; (2) consider the fact undisputed for purposes of the motion; (3) grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show the movant is entitled to it; or (4) issue any appropriate order." Fed. R. Civ. P. 56(e).

Plaintiff appears in this matter pro se, and the Court recognizes that her pleadings must be liberally construed given her lack of legal expertise. But the Court nonetheless must apply Rule

56 and its requirements. *See Sisney v. Kaemingk*, 886 F.3d 692, 697 (8th Cir. 2018). "Like any other civil litigant, [Plaintiff is] required to respond to defendants' motion with specific factual support for [her] claims to avoid summary judgment." *Beck v. Skon*, 253 F.3d 330, 333 (8th Cir. 2001) (citation omitted). The Court further notes that Plaintiff "is a frequent litigator in our court and understands the jurisprudential process." *Id.* The Court thus holds her accountable to the legal standards applicable under Rule 56.

### ii. Disability Discrimination Claims

Plaintiff asserts disability discrimination claims against Defendants pursuant to the ADA, the RA, and MHRA. She argues Defendants have engaged in disability discrimination by refusing to allow her to return to group programming if she leaves to go to the restroom mid-session.

The disability discrimination statutes at issue provide that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." *See* 42 U.S.C. § 12132. Courts construe claims under the ADA and the RA identically (with the exception of the RA's federal funding requirement) and claims under the ADA and the MHRA similarly. *Bahl v. Cnty. of Ramsey*, 695 F.3d 778, 783–84 (8th Cir. 2012); *Loye v. Cnty. of Dakota*, 625 F.3d 494, 496 & n.2 (8th Cir. 2010). For this reason, courts typically consider these claims together. *Bahl*, 695 F.3d at 783.

To establish a prima facie case for disability discrimination, Plaintiff must show that she: (1) is a person with a disability as defined by the statute; (2) is otherwise qualified for the benefit in question; and (3) was excluded from the benefit due to discrimination based on her disability. *Randolph v. Rodgers*, 170 F.3d 850, 858 (8th Cir. 1999). To establish that she is a person with a disability, Plaintiff must demonstrate that she has "a physical or mental impairment that

*substantially limits* one or more major life activities[.]" 42 U.S.C. § 12102(1) (emphasis added). To demonstrate that her conditions are "substantially limiting," Plaintiff must show that she is "[s]ignificantly restricted as to the condition, manner or duration under which [she] can perform a major life activity," as compared to the average person. *Kirkeberg v. Canadian Pac. Ry.*, 619 F.3d 898, 903 (8th Cir. 2010) (citing 29 C.F.R. § 1630.2(j)(1)(ii)). Major life activities include the "operation of a major bodily function" such as the operations of one's "bowel[.]" 42 U.S.C. § 12102(2)(B). But to show that a limitation is "substantial", the difference between the Plaintiff and the average person with respect to the activity must be "considerable." *Kirkeberg*, 619 F.3d at 903 (quoting *Toyota Motor Mfg., Ky. v. Williams*, 534 U.S. 184, 196 (2002) (internal quotations omitted)). Moreover, "[t]he evidence in support of this contention must be more than generic 'evidence of a medical diagnosis of an impairment.'" *Id.* (quoting *Ristrom v. Asbestos Workers Local 34 Joint Apprentice Comm.*, 370 F.3d 763, 769 (8th Cir.2004) (internal quotation omitted)). In determining whether a person is substantially limited in a major life activity, courts consider the following factors: "(1) the nature and severity of the impairment; (2) its duration or anticipated duration; and (3) its long-term impact." *Fjellestad v. Pizza Hut of Am., Inc.*, 188 F.3d 944, 949 (8th Cir. 1999) (citing 29 C.F.R. § 1630.2(j)(2)(i)–(iii)).

The Court finds that Defendants carried their initial burden of establishing there is no genuine issue of material fact with respect to Plaintiff's claim that the bowel incontinence stemming from her gallbladder removal renders her disabled for purposes of these statutes. As Defendants correctly point out, there is virtually no evidence in the record establishing that Plaintiff has a history of bowel incontinence in any capacity—let alone bowel incontinence that is substantially limiting. The only medical record the Court is aware of that even mentions diarrhea symptoms is a March 27, 2002 St. Cloud Hospital Emergency Room document indicating Plaintiff

visited the hospital with reports of nausea, diarrhea, back and abdominal pain, and a history of having had a cholecystectomy (ECF No. 29-1 at 10).  But this visit took place more than 18 years before she made her Reasonable Modification Request (ECF No. 29-1 at 3) and reported only short-term diarrhea symptoms for the previous 12 hours; not chronic symptoms consistent with a disability.  (ECF No. 29-1 at 10.)  In Plaintiff's next documented visit to the St. Cloud Emergency Room on February 26, 2003, she affirmatively reported no symptoms of diarrhea.  (*Id.* at 11.)  During her detention at MSOP, Plaintiff saw medical professionals on multiple occasions over a span of multiple years, and never once claimed she struggled with bowel incontinence of any kind.  (*See* ECF No. 188 ¶¶ 8–12; ECF No. 188-1–188-5; ECF No. 188 ¶ 15; ECF No. 193 at 3.)

Faced with these specific citations to evidence supporting Defendants' Motion for Summary Judgment, Plaintiff was required to "submit evidentiary materials that set out specific facts showing that there is a genuine issue for trial." *Davenport*, 553 F.3d at 1113.  To meet this requirement, she must point to specific evidence that is "more than generic evidence of a medical diagnosis of impairment." *Kirkeberg*, 619 F.3d at 903 (internal quotations and citation omitted).  But Plaintiff failed to produce any evidence supporting her allegation that she has chronic bowel incontinence, and further failed to offer any argument suggesting there is a genuine issue of material fact regarding whether her bowel symptomology and diagnoses constitute a statutory disability.  Based the record before the Court, and with all evidence and inferences construed in the light most favorable to the Plaintiff, the Court must conclude that a reasonable jury could not return a verdict in Plaintiff's favor on her ADA, RA and MHRA claims.  The Court accordingly recommends dismissal of these claims.

### iii. Impermissible Punishment Claim

Plaintiff alleges the MSOP's refusal to permit her to return to group programming after restroom breaks is improper punishment and serves no legitimate government interest. (ECF No. 47 ¶¶ 71–73.) An organization such as the MSOP cannot punish civilly committed people "without running afoul of the Fourteenth Amendment." *Karsjens v. Lourey*, 988 F.3d 1047, 1052 (8th Cir. 2021), *cert. denied*, 142 S. Ct. 232 (2021). To determine whether a civilly committed person has been punished, the Court must assess "whether the disability is imposed for the purpose of punishment or whether it is but an incident of some other legitimate governmental purpose." *Id.* (quoting *Bell v. Wolfish*, 441 U.S. 520, 538 (1979)). When a plaintiff is unable to show an express intent to punish, the determination will turn on "whether an alternative purpose to which [the restriction] may rationally be connected is assignable for it, and whether it appears excessive in relation." *Id.* (internal quotation marks omitted). In other words, even if a plaintiff is unable to show that the defendant had punitive intent, the plaintiff can still prevail if she plausibly alleges "objective evidence that the challenged governmental action is not rationally related to a legitimate governmental objective or that it is excessive in relation to that purpose." *Kingsley v. Hendrickson*, 576 U.S. 389, 398 (2015) (citations omitted).

The record before the Court indicates that group therapy is an important treatment tool offered at MSOP. (ECF No. 187 ¶ 5.) The MSOP's Executive Clinical Director states that, in her training and experience, "group members arriving late, leaving early, or leaving and returning during group sessions often disrupts group cohesion and interrupts group process, structures and the treatment experience of individuals." (*Id.* ¶ 9.) For this reason, some co-facilitators prohibit group members from returning to group therapy sessions if they leave mid-session to go to the restroom. Plaintiff's group co-facilitators imposed such a prohibition but allowed an exception for

15

individuals who could provide a documented reason or explain the need to leave during a session in advance. (ECF No. 194 ¶ 6.) Plaintiff requested a modification to this practice, but the MSOP denied her request because Plaintiff did not produce any medical records documenting she had a bowel impairment at any point in the preceding 18 months. (ECF No. 190 ¶¶ 2–7; ECF No. 29-1.)

Maximizing the efficacy of treatment is undoubtedly rationally related to the MSOP's legitimate interest in rehabilitating its detainees, and the group co-facilitators' determination that frequent disruptions to therapy sessions would interfere with that goal is reasonable. Moreover, since the co-facilitators would have permitted Plaintiff to return to group therapy after restroom breaks if she had obtained medical documentation supporting her request, the MSOP's policy is not excessive as that purpose. Plaintiff has proffered no response to Defendants' arguments on this point and has introduced no evidence creating a genuine issue of material fact suggesting Defendants' policy is in any way punitive or excessive in relation to its purpose. The Court recommends denial of Plaintiff's impermissible punishment claim on these grounds.

### iv. Inadequate Medical Care Claim

Plaintiff further asserts a Fourteenth Amendment inadequate medical care claim "by failure to provide Ms. Meranelli with reasonable accommodations to her disability[.]" (ECF No. 47 ¶ 68.) Put another way, Plaintiff asserts that Defendants' alleged failure to provide her with accommodations required by the ADA and RA violated her constitutional right to adequate medical care. But "when a comprehensive remedial scheme evidences a congressional intent to foreclose resort to section 1983 for remedy of statutory violations[,] … [c]ourts should presume that Congress intended the enforcement mechanism provided in the statute to be exclusive." *Alsbrook v. City of Maumelle*, 184 F.3d 999, 1011 (8th Cir. 1999) (citing *Pona v. Cecil Whittaker's, Inc.*, 155 F.3d 1034, 1038 (8th Cir.1998), *cert. denied*, 526 U.S. 1131 (1999)). Since the RA and

the ADA are comprehensive remedial schemes, Plaintiff cannot bring a section 1983 claim predicated on an alleged violation of those statutes. *Grey v. Wilburn*, 270 F.3d 607, 610–11 (8th Cir. 2001*); Richards v. Minnesota*, 13-cv-3029 (JRT/JSM), 2016 WL 7007487, at *4 (D. Minn. Nov. 29, 2016).  Because Plaintiff's section 1983 claim is predicated exclusively on Defendants' failure to provide the accommodations underlying her ADA and RA claims (ECF No. 47 ¶ 68), her section 1983 claim is not cognizable and should be dismissed.  *Wong v. Minnesota Dep't of Hum. Servs.*, 820 F.3d 922, 936 (8th Cir. 2016).  For the foregoing reasons, the Court recommends granting Defendants' Motion for Summary Judgment in its entirety.

## RECOMMENDATION

Based on the foregoing, and on all of the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED THAT**:

1. Plaintiff's Motion for Voluntary Dismissal Without Prejudice and Notice (ECF No. [200]) be **DENIED**;

2. Defendants' Motion for Summary Judgment (ECF No. [183]) be **GRANTED**; and

3. This matter be **DISMISSED WITH PREJUDICE**.

Dated: November 20, 2023          *s/ Dulce J. Foster*
                                   Dulce J. Foster
                                   United States Magistrate Judge

## NOTICE

**Filing Objections:**  This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation.  A party may respond to those objections within 14 days after being served a copy of the objections.  *See* Local Rule 72.2(b)(2).  All objections and responses must comply with the word or line limits set forth in Local Rule 72.2(c).